May Term,
1860.

ANDERSON
v.
THE KERNS
DRAINING
COMPANY.

---

## ANDERSON *v.* THE KERNS DRAINING COMPANY.

A draining company organized under the act of 1852, are not bound, upon an answer of *nul tiel corporation,* to prove upon the trial the existence of the corporation.

The act is not unconstitutional.

The rights of eminent domain and taxation, may be exercised for public purposes, where no constitutional restriction forbids it.

There is no constitutional prohibition upon local taxation for objects in themselves local.

This case distinguished from the school cases.

The draining of marshes and ponds, for the promotion of the public health, is regarded as a public object, for the furtherance of which taxes may be assessed; but the draining of farms to render them more productive, is not such an object, and a corporation organized for that purpose could not levy and collect a tax.

APPEAL from the *Cass* Circuit Court.

PERKINS, J.—The *Kerns Draining Company* was organized under the act to authorize the construction of levees and drains, approved *June* 12, 1852, and found in 1 R. S. at p. 257.

The company constructed a drain, and assessed *Anderson*, for benefits thereby conferred upon him, a fraction less than 30 dollars.

*Anderson* refused to pay; the company sued him, and obtained judgment below.

Two questions arise in the case—

1. Was the company bound, upon the answer of *nul tiel corporation*, to prove, on the trial, the existence of the corporation?

*Thursday,*
*May 31.*

May Term,
1850.

ANDERSON
v.
THE KERNS
DRAINING
COMPANY.

2. Is the law authorizing the creation of the corporation constitutional?

Section 5 of that act declares that the existence of the corporation shall be judicially taken notice of in the counties where its articles are recorded. This seems to impose upon the Court the duty of examining the recorder's office, and determining for itself the fact, from an inspection of the record, whether there is, in the county, a legally organized draining, &c., company. It makes the question one of law, to be decided by the Court, like the question as to the time when given public laws take effect. Under such an issue, and, perhaps, under any state of the pleadings, the Court is bound, if it finds there is no such organized company (a fact it is bound to ascertain the existence or non-existence of), to dismiss the suit.

In considering of the constitutionality of the act, it will be proper, in the first place, to ascertain exactly what it provides for—what it authorizes to be done.

It authorizes property to be taken for the public use, and improvements to be made for the public benefit, and the assessment of taxes to pay for such property and improvements. It provides, then, for the exercise of the right of eminent domain, and of taxation for public purposes; and for such purposes these rights may be legitimately exercised.

The statute does not assume to designate the particular cases in which the right should be exercised, to locate the particular levees and drains which would be of public use and benefit; but asserts, generally, that such as are, may be constructed pursuant to the act, and leaves it a question for the Court to determine in each particular case, whether the levee or drain in that case is for public use or benefit. Where no constitutional restriction forbids it, such exercise of the right of eminent domain, and of the power of taxation, is legal. 7 Ind. R. 576.—*The People* v. *The Mayor, &c.*, 4 Comst. 419.

Is there any restriction upon such taxation in our constitution?

Section 1, art. 10 of the constitution, declares that the

legislature shall provide for a uniform and equal rate of taxation, and for a just valuation of all the property in the state; and by §§ 22 and 23 of art. 4, local laws authorizing taxation are prohibited. But it has already been decided that these provisions do not prohibit local taxation for objects in themselves local. *The City of Lafayette* v. *Jenners*, 10 Ind. R. 75. They require a general, uniform levy for state purposes, but they do not forbid local taxation under general laws. *The Bank* v. *The City of New Albany*, 11 Ind. R. 139. Nor do we think they prohibit indirect taxation by way of licenses upon particular pursuits, &c. See Walk. Am. Law, 3d ed., p. 122. Such indirect taxation may be made effectual as a police regulation. The taxing, which is a part of the legislative power of the state, is supreme, except where limitations are imposed. See *The City of Aurora* v. *West*, 9 Ind. R. 74. Indirect taxation, by way of tariffs, &c., has ever been regarded a legitimate exercise of the taxing power; and we do not think a provision in the constitution requiring the general levy of direct taxes for state purposes to be upon a uniform assessment, implies a prohibition of all other taxation. Such, at all events, is not the conventional force of its language.

The case at bar differs from the school cases in this, that the school law, under which they arose, was operative all over the state, and, hence, required uniformity of taxation for the support of common schools in every district in the state, common schools being a state institution; which uniformity was broken by local taxation for their support in a part of the districts, additional to that of the state, as would be the case in regard to the general levy for general state purposes, if, for these purposes, local taxation, additional to the general levy, was permitted.

But private property must be taken only for public use, and local taxation must be permitted only to defray expenses in cases of public use and benefit. And if the tax assessed in the case at bar was for such public use and benefit, the mode of its assessment, it seems, was unobjectionable. *The People* v. *The Mayor, &c., supra.— Wood-*

ANDERSON
v.
THE KERNS
DRAINING
COMPANY.

*ruff* v. *Fisher*, 17 Barb. (N. Y.) 224.—*Hartwell* v. *Armstrong*, 19 *id.* 166.

What is to be regarded as a public object in the taking of private property, and in the assessment of taxes, is a question of great difficulty, in many cases.

The building of mills has been held such. *Hankins* v. *Lawrence*, 8 Blackf. 266. The construction of canals and railroads and public highways, has been held such. *Dronberger* v. *Reed*, 11 Ind. R. 420.

So has the improvement of streets in a city, for they are public highways. *Snyder* v. *Rockport*, 6 Ind. R. 237.

So has the draining of marshes and ponds for the promotion of the public health. See *Hartwell* v. *Armstrong*, *supra*. But the draining of a man's farm, simply to render it more valuable to the owner, would not be a work of public utility, in the constitutional sense of the term; and a corporation organized and acting for such a purpose, would no more be acting in a public undertaking, than would a company organized and acting for the clearing up of men's farms and putting them in a better state of cultivation than the proprietors were willing to do, though the public and adjoining proprietors might be, in a substantial degree, benefitted by the operation. And forcible taxation to pay for the benefit would hardly be tolerated.

In this case, the evidence is not upon the record, and, hence, we must presume a case of public benefit was made out.

It appears by the record that a demurrer was filed; but that, without waiting for a decision upon it, the party answered over. He thereby waived his demurrer.

*Per Curiam.*—The judgment is affirmed with 1 per cent. damages and costs.

*H. P. Biddle* and *B. W. Peters*, for the appellants.

*D. D. Pratt*, for the appellee.