ANDREW PLEULER, PLAINTIFF IN ERROR, V. THE STATE
OF NEBRASKA, DEFENDANT IN ERROR.

1. **Statute:** CONSTITUTIONALITY OF. To justify a court in pronouncing an act of the legislature unconstitutional, it must be clear, and free from reasonable doubt that it is so.

2. **Taxation:** UNIFORMITY. The rule of uniformity in taxation required by section 1, Article IX, of the constitution of this state, is satisfied if duly observed as to each jurisdiction for whose use the particular taxes are levied.

3. **License Fees Not Taxes.** The exaction of license fees, under the act "to regulate the license and sale of malt, spirituous, and vinous liquors," etc., approved February 28th, 1881, is not taxation, either in the ordinary or the constitutional signification of that term.

4. **Liquor Law of 1881 Constitutional.** The above mentioned act conflicts with no provision of the constitution of this state, and is, *in all respects,* a valid law.

5. **License Privileges.** Privileges granted under the former license law, which was repealed by this one, were absolutely revoked upon its taking effect.

ERROR to the district court for Douglas county, where plaintiff in error had been indicted for selling spirituous liquors without having a license therefor, under and pursuant to the act of February 28th, 1881, "to regulate and license the sale of malt, spirituous, and vinous liquors," etc., and without having complied with the provisions of that act. Upon a plea of not guilty there was a trial before SAVAGE, J., and a jury. The state gave evidence tending to show that spirituous and malt liquors were sold by the plaintiff in error, in the city of Omaha, on the twenty-second day of June 1881; and that he had not procured a license therefor from the city, pursuant to said act. Thereupon, the plaintiff in error moved that the jury be directed to return a verdict of not guilty, and that the plaintiff in

error be discharged, grounding the motion upon the alleged unconstitutionality of the act. This motion was overruled, to which exceptions were taken. The plaintiff in error then testified that on the day and at the place where the liquor and beer were sold, according to the witnesses of the state, he was carrying on business under a license for selling spirituous liquors (which was afterwards offered in evidence), dated January 1st, 1881, for which license he had paid $100; and that he had complied with all the provisions of the law then in force regulating the sale and dealing in liquors. The license was then offered in evidence, and was, upon objection, excluded. The court instructed the jury to the effect that if the plaintiff in error sold liquors as charged, and had not a license therefor under the act in question, the verdict must be guilty. To this exceptions were duly taken. A verdict of guilty was rendered. Motion for a new trial was made and overruled. Judgment was pronounced, and its execution suspended, on application of the plaintiff in error, to enable him to apply for the writ of error which brought the case here.

*E. Wakeley* and *J. C. Cowin*, for plaintiff in error.

· The act is unconstitutional. 1. The exaction is a tax on the business of selling liquors. Cooley on Taxation, 1, 3, 5, 10, 403, 408. Burroughs on Taxation, 69. It is none the less a tax because the object may be wholly or in great part to prevent and discourage the business. The manner in which the sum is levied, whether as a tax in name, to be collected like other taxes, or as payment for a license to carry on the business, is not material. The last may be a tax as well as the first. The exacting of any greater sum than could be properly demanded as a mere incident to the

power to license and regulate the business is taxation. *Ward v. Maryland*, 12 Wall., 418. *Lucas v. The Lottery*, 11 Gill & Johns., 506. *Kitson v. The Mayor*, 26 Mich., 325. *Essex Co. v. Barber*, 7 N. J. L., 64. *Kip v. City of Patterson*, 26 Id., 298. *Mayor v. Second Av. Ry. Co.*, 32 N. Y., 26. *Com. v. Stadder*, 2 Cush., 562. *Mays v. Cincinnati*, 1 O. St., 268. *St. Louis v. Boatmans' Ins. Co.*, 47 Mo., 150. *Collins v. Louisville*, 2 B. Mon., 134. *Wendover v. Lexington*, 15 Id., 258. *Mason v. Lancaster*, 4 Bush., 406. *Kniper v. Louisville*, 7 Id., 599. *Youngloyes v. Sexton*, 32 Mich., 406. *Chilvers v. People*, 11 Mich., 43. *State v. Hoboken*, 33 N. J. L., 280. These authorities indicate the distinction between *licensing* the traffic in liquors and *taxing* it. A license fee may be exacted, provided it does not transcend the just limits of such a fee and encroach on the domain of taxation. The amount must be limited to covering expenses caused by the business. But this law empowers a municipality to demand any sum, for any purpose, as a condition of pursuing the business. It therefore permits taxation—a tax upon the business of liquor sellers—a tax upon the privilege of carrying it on. By the constitution, sec. 6, art. V, the support of the common schools—the free education of the children—are made state objects and state duties. By the constitution, sec. 5, Id., and by this law, every dollar paid for license money is devoted exclusively to this state object. Not one cent goes to defray the expenses which the liquor traffic may cause. It goes to the same fund and to the same purpose as money raised by a school tax. It has every element of a tax for revenue. *Greencastle v. The State*, 5 Ind, 557. The constitution, sec. 1, art. IX, requires this taxation to be uniform as to the class which is taxed. But the tax imposed by this provision is wanting in every element of uniformity. Nor is it a good answer to say the con-

stitution is satisfied if the tax or license fee is the same throughout the municipality imposing it. It must be imposed by or under a "*general law*, uniform," etc. The obvious and unquestionable purpose was that the uniformity should be co-extensive with the jurisdiction embraced in the operation of this general law. The object of the provision would be wholly frustrated if the taxing power could by general law be parcelled out to small subdivisions of the state on condition that it should be experienced with uniformity therein. That the legislature cannot delegate to a municipality a power to reject the rule of uniformity which is binding upon itself will doubtless be conceded. *Knowlton v. Supervisors*, 9 Wis., 410. *Gilman v. City of Sheboygan*, 2 Black, 510. The act, secs. 4, 18, and 28, confers legislative power on the judiciary. This violates the constitution. The constitution is also violated by arbitrarily prohibiting the sale of liquors within a strip of two miles around an incorporated city or village, while it is permitted both without and within that limit.

2. The privilege of selling liquors, given to the accused by his license, was not taken away by the repeal of the law under which it was given, or by the enactment of that which took its place. The unquestioned rule is that the repeal of a statute takes away only such rights and remedies as did not exist independently of it; in other words, such only as owed their existence solely to it. The license was an affirmative grant of a privilege, for a valuable consideration, and on other onerous conditions, to carry on a traffic in liquors for a specified time. It is very clear that a new statute, enacted before this privilege had expired, could not take it away without a retrospective operation. Statutes will not be construed as intended to act retrospectively unless this intention clearly appears. Dwarris on Statutes, p. 162. And the intent to take away privi-

leges already granted does not appear in this act. The
conditions upon which it shall be carried on are
changed. This is all. No intent can therefor be
presumed to take away rights already granted. The
argument on this basis would prove too much, as it
would follow that a new law making the conditions
less onerous, the sum to be paid for licenses smaller,
and the bond to be given less stringent, would require
those who had complied with the old law to forego all
benefit therefrom, and pay, in addition, the smaller
sum, and give, in addition, the less stringent bond.
It would follow, further, that the repeal of the old law
and the enactment of a new one, making even the
slightest change, would blot out all rights conferred
by the old. To take away a privilege granted by the
state, for a valuable consideration, to carry on a law-
ful business, without providing for a restoring of the
money, or a just proportion of it, would be an act of
*bad faith* on the part of the legislature, which should
not be imputed to it. *Torrey v. Corlis*, 33 Me., 383.
*Ganett v. Higgins*, 1 Scam., 335. *Robinson v. Bowen*, 2
Id., 499. *White v. Blum*, 4 Neb., 555; *Belvidere v. War-
ren Co.*, 34 N. J. L., 193. *Baldwin v. Newark*, 38 Id.,
158. *Vreeland v. Bramhall*, 39 Id., 1. *City of Elizabeth
v. Hill*, Id., 555. *State v. Ferguson*, 62 Mo., 77. *Wood
v. Oakly*, 11 Paige, 400. *Butler v. Palmer*, 1 Hill, 335.
*Sackett v. Andros*, 5 Id., 227. *Plumb v. Sawyer*, 21
Conn., 351. *Murray v. Gibson*, 15 How., U. S., 421.
*Chilvers v. The People*, 11 Mich., 43. *State v. Hoboken*,
33 N. J. L., 280. The same rule of construction which
would take away this privilege would take away from
every lawyer in Nebraska his license to pursue his pro-
fession under the existing law, if this should be re-
pealed and a new one enacted imposing different con-
ditions. Grant that this *might be* done. Would it be
presumed that there was an intention to do this unless

language should be employed clearly indicating it? The authorities say no, and the common understanding of reasonable men would be to the contrary. It will be found that most of the decisions, if not all, holding that the right is taken away by subsequent legislation, are grounded on an expressed intent.

3. One other question remains—whether, on account of these unconstitutional provisions, the law must be wholly set aside; or whether, notwithstanding them, the penalties can be enforced. The rule on this subject has become established, and the question is whether this case falls within it. If the unconstitutional provisions so enter into the frame-work, texture, and objects of the law that they must be held to have been inducements to its passage, or to be essential to its operation, or indispensable parts of it, or if it is therefrom presumable that without them the law would not have been enacted, then the whole law must go. Tested by any of these criteria, this law can not stand. The matters complained of are important and fundamental. It is beyond all question that the raising of the license fee, and the demand of a large sum which gives to this law its distinctive appellation of "high license," in the popular phrase, was of the very essence of it in the estimation of its framers and supporters.

*G. W. Ambrose* (*E. Estabrook* with him), for the defendant in error.

1. No one is here complaining of the action of the commissioners in refusing a license within two miles of the city limits. The question of whether the board rightfully refused to grant a license upon proper evidence, or whether the legislature can declare the kind of evidence necessary to sustain an action for damages

under this law, or whether the remission of a penalty
is an executive function only, are none of them now
before this court. And if they were, and each and all
of them considered unconstitutional, still the question
of the power of the legislature to regulate the sale of
liquor, and the exacting of a license fee for the carry-
ing on of the business would remain untouched. It
is a familiar rule that even parts of an act, or even
parts of a section of an act may be inhibited and still
the balance be good. Dillon Municipal Corp., sec.
354. *Commonwealth v. Hatchings*, 5 Gray, 482. *Rogers
v. Jones*, 1 Wend., 237. *Santo v. State*, 2 Iowa, 165.
*Kittering v. Jacksonville*, 50 Ill., 39.

2. The words tax and assessment are often used
interchangeably in legislation, but in constitutional
provisions they have a separate and distinct meaning
—one for purposes of general revenue, the other for
local purposes. In the section under consideration the
power is given the legislature to "provide such reve-
nue as may be needful by levying a tax by valuation,"
etc. This of course, it is conceded, refers to general
revenue. In the same sentence, separated by a comma
and connected by the word "and" it provides, "and
it shall have power to *tax* peddlers, brokers, liquor
dealers," etc., "in such manner as it shall direct by
general law, uniform as to the class upon which it
operates." Here the one mode for raising general
revenue is by a uniform tax upon property by valua-
tion, the other is by a tax upon classes of business by
some other mode than valuation, but uniform as to the
class. The constitution has in view general revenue
only in its reference to taxing the class of business
here in question. *A. & N. R. R. v. Lancaster County*,
4 Neb., 537. *Tiernan v. Rinker*, 102 U. S., 123.

3. The police power of a state, in a comprehensive
sense, embraces its system of internal regulation by

which it is sought, not only to preserve public order and prevent offenses against the state, but to establish for the intercourse of citizen with citizen those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and insure to each the uninterrupted enjoyment of his own, so far as it is reasonable and consistent with the like enjoyment of all rights by others. . This power secures protection to the lives, limbs, comfort, and quiet of all persons, and the protection of all property within the state; each person using his own property so as to not prevent the enjoyment by others of theirs; the general comfort, health, and prosperity of the state being the object. *Thorpe v. The Railroad Co.*, 27 Vermont, 140. *People v. Mich. Plank Road*, 10 Mich., 307. License Cases, 5 How., 632. *Commonwealth v. Tewksbury*, 11 Met., 55. The regulations of the liquor traffic come within this power. They are looked upon as police regulations, established by the legislature for the prevention of intemperance, pauperism, and crime, and for the abatement of nuisances. There are many statutes in this country which have declared the keeping of liquor for sale a nuisance, and have provided legal process for its diminution and destruction, and to seize and condemn the building occupied for that purpose. These statutes have by an overwhelming weight of authorities been sustained. 2 Story on Constitution, sec. 1954. *Burch v. Savanah*, 42 Ga., 596. *Falmouth v. Watson*, 5 Bush. (Ky.), 660. *Thompson v. The State*, 15 Ind., 449. *Santo v. The State*, 2 Iowa, 165. *Kitson v. Mayor*, 26 Mich., 325. *Board of Excise v. Barrie*, 34 N. Y., 657. *Kittering v. Jacksonville*, 50 Ill., 39. *Turnan v. Kinker*, 102 U. S., 123.

4. A license is not a tax. It is only a police regulation. *Frankfort v. Philadelphia*, 58 Penn. State, 119. *Johnson v. Philadelphia*, 60 Penn. State, 445.

*Chicago Packing Co. v. City of Chicago*, 88 Ills., 281.
*Allerton City Railway Company*, U. S. Circuit Court Illinois. *Munn v. The State*, 94 U. S., 113.

5. If this law be not uniform in its operations, then the principle which underlies all tax laws—uniformity—has been violated from the inception of the territorial government, and each subsequent legislature of the state since 1867 has violated it, and this court and the courts of the United States have sanctioned its violation by the inforcement of the school taxes voted by the several school districts, as, in the judgment of the voters, their needs may require. No two are alike. The taxes are not uniform, yet such has been the policy of the law makers of this state and territory that such taxes have been imposed, and no one has seen fit to call them in question. *St. Louis v. Wherung*, 46 Ill., 392. *Ex parte Hart*, 49 Cal., 557. *Burchholter v. McConnellsville*, 20 Ohio State, 312.

6. The license under the old law is no protection. Sedgwick on Con., 104, 105. *Stone v. Mississippi*, 101 U. S., 814.

LAKE, J.

In the consideration of this case it should be kept in mind that to justify a court in pronouncing an act of the legislature unconstitutional, it must be clear and free from reasonable doubt that it is so, not a doubtful and argumentative implication. Or, in other words, a statute should not be held invalid unless it is clearly forbidden by the paramount law. Such substantially has been the holding of all courts speaking upon this subject. *Cooper v. Telfair*, 4 Dallas, 14. *Sharpless et al. v. The Mayor etc.*, 21 Pa., 147. *Adams v. Howe*, 14 Mass., 340. *City of Lexington v. McQuillan*, 9 Dana, 513. *Santo v. The State*, 2 Ia., 165. *The State*,

*ex rel., v. County Judge,* 2 Ia., 280. *Fisher v. McGirr,* 1 Gray, 1. *Sears v. Cottrell,* 5 Mich., 251. *Tyler v. The People,* 8 Mich., 333. *Hill v. Higdon,* 5 Ohio Stat., 243.

The primary and chief reason urged for the reversal of this judgment is, that the act under which the conviction was had is in conflict with Sec. 1, Art. IX of the constitution of this state, which is that: "The legislature shall provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property and franchises, the value to be ascertained in such manner as the legislature shall direct, and it shall have power to tax peddlers, auctioneers, brokers, hawkers, commission merchants, showmen, jugglers, inn-keepers, liquor dealers, toll bridges, ferries, insurance, telegraph, and express business, venders of patents, in such manner as it shall direct by general law, uniform as to the class upon which it operates."

The ground of the alleged infraction of this provision of the constitution is, that the money exacted for a license issued under the act in question is simply a tax upon the business of the licensee, and, as necessarily imposed under the law, lacks the essential element of uniformity. As we view the law, however, this question of uniformity is not necessarily involved in the decision to be here made, and, even if the claim that this exaction of license money is but taxation, pure and simple, whatever might be said of the manner of its enforcement, it is not at all clear to our minds that the law itself is wanting in this particular.

This statute is in many respects a peculiar one. In the first place it will be observed that, without action by the local authorities under it, it is strictly a prohibitory law throughout the entire state. The eleventh

section provides that: "All persons who shall sell or give away, upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks, without having first complied with the provisions of this act and obtained a license as herein set forth, shall, for each offense, be deemed guilty of a misdemeanor," etc.

As before said, this prohibition is general, covering the whole state, but, presumably out of respect and in deference to the varying sentiments of the local communities in the several counties, cities, and villages on the subject of liquor traffic, provision is made for its legalization under very stringent regulations through the medium of licenses, which may be obtained if the local authorities in their discretion see fit to grant them. In effect, it is simply a local option law, for the local officers may either license, or refuse to license, as they "shall deem best."

By sec. 5, art. VIII of the constitution "All fines, penalties, and *license* moneys, arising under the general laws of the state," belong to the school fund of counties, cities, and other local subdivisions, respectively, in which they are collected; so that, even if these license moneys were to be deemed taxes, within the meaning of the constitutional provision relied on, and to which we shall hereafter refer more particularly, they are not state, but merely local taxes, and if enforced within each of the inferior jurisdictions according to some uniform rule, the objection here urged could have no force, for it seems to be well settled that this rule of uniformity is fully satisfied if duly observed within each jurisdiction for whose use the taxes are levied; state taxes uniform throughout the state, county taxes throughout the county, city taxes throughout the particular city, etc., being all that is required, although levied under a general law of the state.

. In *Youngblood v. Sexton*, 32 Mich., 406, the principal question was as to the validity of an act for the taxation of liquor traffic. It was objected that it violated a provision of the constitution of that state, which required all specific state taxes, except those received from certain mining companies, to be applied "in paying the interest on the primary school, university, and other educational funds, and the interest and principal of the state debt," etc. But by the act in question the taxes were appropriated "to the use of the towns, villages, and cities in which the business taxed was carried on." The court held that although levied in pursuance of a general law of the state, it was not a state tax within the meaning of the constitution. Being put to the use of the community which paid it, it was in no proper sense anything more than a local tax, and that the constitutional requirement of uniformity was satisfied by the tax being levied upon all dealers alike, without discrimination on account of the amount of business done. See also upon this point: *Commissioners of Ottawa Co. v. Nelson*, 19 Kans., 234. Reported in 27 Am. Reports, 101. *City of New Orleans v. Kaufman*, 29 Am. Reports, 328, and 29 La. Ann. 283. *State v. Rolle*, 31 Am. Reports, 234, and 30 La. Ann. 991. From these authorities it would seem that even if the exaction of this money were to be regarded as a species of taxation simply, the constitutional rule of uniformity would not be broken so long as, within the particular district, no discrimination is made in the amounts required from persons applying for licenses.

But do these license moneys fall within the purview of the provision of the constitution above quoted? It is strenuously insisted by counsel for the plaintiff in error in their brief, and was in oral argument at the bar, that they do, and many authorities were cited as sustaining that view, the more prominent of which we

will now notice very briefly: The first case in the order of citation is that of *Ward v. Maryland*, 12 Wall., 418, wherein it appears that, by a state statute, resident traders were required to take licenses and pay therefor from twelve to one hundred and fifty dollars, according to a sliding scale, with reference to stock in trade. Non-resident traders were required to pay three hundred dollars annually for the same privilege. It was held that the exaction was a tax, and that the distinction made between resident and non-resident traders rendered the law repugnant to Sec. 2, Art. 4 of the constitution of the United States. In this case the exaction was clearly a tax, and nothing else, as the purpose of the law was, *not regulation*, but the raising of revenue alone.

The next case, that of *Essex v. Barber*, 7 N. J. L., 64, is one in which it appears that, in the incorporation of certain towns, power was given them to license innkeepers under certain restrictions. Afterwards a general act was passed giving power to the several county authorities to license inn-keepers, and also to tax them from ten to seventy dollars; according to certain regulations. The regulations about the power to license were, that innkeepers should be recommended by certain persons; that their licenses should be for only one year; that they should enter into recognizance with surety, etc. The regulations surrounding the power to impose the tax respected the situation and advantages of the place for an inn; the limitations of the amount; the paying down of the money, and the way it should be appropriated. The last named act also contained a provision that nothing contained therein should "affect the rights, powers, privileges, and immunities given and granted by law to any city or town corporate, relative to the licensing of inns and taverns," they "conforming to the directions,

and being subject to the limitations, restrictions, and provisions herein contained, and given to the courts of general quarter sessions of the peace in the several counties of the state." Under these provisions it was held that there was a radical difference between the power given to cities and that given to counties, and that the former had no power to tax.

In *Kip v. The City of Paterson*, 26 N. J. L., 298, an ordinance of the city required all persons who sold hay or other produce, and delivered the same within the city, to pay a fee of five cents. This was held to be an unwarranted and unreasonable exercise of the power to regulate the police of the city, and unauthorized by the charter. This was a question solely of municipal power.

In *Mayor, etc., v. Second Ave. R. R. Co.*, 32 N. Y., 261, it was held that an ordinance imposing a license duty upon city cars, *for revenue purposes only*, was not an ordinance for police and internal government. Of this ordinance the court said: "There is nothing for the railroad corporation to do but to pay the mayor the sum of fifty dollars annually for each car, and receive in return a license or certificate that the money has been paid. The ordinance imposes no duties to be observed by the company or its servants, but the single act of paying the money. It prescribes no regulations in regard to the size, dimensions, comfort, and cleanliness of the cars, the speed at which the same shall be run, the manner of receiving and discharging passengers, their numbers and names, and the stations at which they shall stop. Regulations of police are regulations of internal or domestic government, forbidding some things, and enjoining the performance of others, for the security and protection and to promote the happiness of the governed. The only act enjoined by the ordinance in question is the payment of the

fifty dollars, and the only act which it forbids is the running of the cars without the payment of the money." We quote thus largely from the opinion in this case, for the reason that it draws, very clearly, the real distinction that exists between an exaction of money as a tax merely for revenue purposes, and one which is but an incident to regulation. Very clearly in that case the provisions of the ordinance in question were simply of a fiscal character, and for the purpose of replenishing the corporation treasury, and not regulations of police, prescribing and enforcing rules of action or conduct for the good order and benefit of society.

The case of *Commonwealth v. Stodder*, 2 Cush., 562, concerned a certain ordinance of the city of Boston relative to hacks, coaches, omnibuses, etc., requiring them to be licensed, and exacting in payment therefor from one to twenty-five dollars. This ordinance was passed under a provision of a statute entitled, "An act to prevent obstructions to the streets of cities, and to regulate hackney coaches and other vehicles," which provided that the mayor and aldermen of any city should "have power, from time to time, to make and adopt such rules and orders as to them shall appear necessary and expedient for the due regulation in such city of omnibuses, hackney coaches," etc., " used or employed wholly or in part in such city, whether by prescribing their routes and places of standing, or in any other manner whatsoever." The court held, first, that the exaction of money for a license was *unauthorized;* and, second, that as to persons residing out of the city, and running carriages into the city and back again, for the conveyance of passengers, there was no authority under the law to exact even the taking of a license.

In *Mays v. Cincinnati*, 1 Ohio St., 268, it was decided that "the sum demanded for a license to pursue an

employment, *when used as a means of supplying the pub-lic treasury*, is a tax on such employment." And also, that under an authorization " to prevent forestalling the markets, and huckstering therein," the city coun-cil could not embrace as hucksters persons not falling within the accepted meaning of that term. This is all there is of that case.

In *St. Louis v. Boatmans' Ins. Co.*, 47 Mo., 150, the court, while holding that where a city is simply au-. thorized to license, it cannot also tax the licensee, said: " *The words ' to license' may imply the power to tax, when such is the manifest intention*, but, taken disconnected and alone, they will not generally confer that authority." In this case the power conferred by the charter was to license and tax grocers, horse railroad cars, hackney carriages, theatrical and other exhibitions, shows, and amusements, billiard tables, etc., and, in the same con-nection, simply to license insurance companies. The court was of opinion that these provisions being found in the same section showed that the mind of the law-giver was directed to the subject, and that the power to tax was given where it was intended to be exercised, and that it was withheld where it was not so expressed.

In *Collins v. Louisville*, 2 B. Monroe, 134, the authority given to the city was: " To appoint measurers of lime, and coal, and wood, brought to the town for market, by land or water, and sold therein, and to affix a rea-sonable allowance to such measurer, and to make such regulations as may be necessary and proper for carry-ing the same into effect, and to inflict penalties for the breach of such regulations." It appears that under this authority it was ordained that the seller of coal brought to the city by water should pay a half cent per bushel for what was sold and delivered in carts, and a quarter of a cent for what was sold in bulk upon the boat. And the measurer was required to pay the

proceeds of his measurements, less certain expenses, into the city treasury, and to receive for his compensation one-fourth of the amount collected. The court, very properly as we think, said that, from the ordinances and facts stated, it seemed too plain to admit of doubt that this was "a tax upon coal, not merely for the purpose of defraying the expenses of measurement, but principally and substantially for the purpose of raising revenue from that article, which, after paying the expenses of measurement, shall go into the general fund of the city. None of the ordinances contain the slightest evidence that, in fixing the price to be paid upon each bushel of coal measured or sold, any reference whatever is had to the actual or probable expense of measurement;" and held the exaction to be unwarranted.

In *Wendover v. The City of Lexington*, 15 B. Monroe, 258, it appeared that the legislature had authorized the corporate authorities to require "all lottery offices and agencies within the limits of the city to take out licenses," and to demand "for each license so issued a sum not exceeding one hundred dollars." In construing this statute, it was held that, as to lotteries for which the state had received no bonus in authorizing the scheme, such tax was lawful, but as to those for which a bonus had been received, it could not be sustained.

*Mason v. Trustees of Lancaster*, 4 Bush., 406. In this case it was simply decided that the trustees of Lancaster, being duly authorized by act of the legislature, might license taverns, and exact a tax therefor not exceeding two hundred dollars per annum, although they had paid for the same period both a United States and state license tax.

*Kniper v. Louisville*, 7 Bush., 599, is also one in which a delegated power was involved. It simply holds that

a power delegated to a city by the legislature must be strictly followed. Such is the rule which the courts generally apply. In this case it appeared that the city of Louisville, being authorized by its charter to require each brewer or distiller to take a license, and to exact not less than fifty, nor more than five hundred dollars therefor, and also "to grade, class, and fix the rate of license within the minimum and maximum amounts designated," passed an ordinance requiring brewers to pay one-tenth of one per cent on the amount of liquor manufactured, and that each one should pay at least fifteen dollars per annum. This ordinance was held to be invalid for the reason that the rate thereby established was not kept within the minimum and maximum amounts fixed by the legislature.

The case of *Youngblood v. Sexton* before referred to, on the question of uniformity, is cited upon the point we are now considering. It appears that the constitution of Michigan provided that "the legislature shall not pass any act authorizing the grant of license for the sale of ardent spirits or other intoxicating liquors." The court, in construing this provision, decided that the tax was not a license; that whether taxed or not, the traffic, not being prohibited, was legal. And, quoting from the language of Mr. Justice Manning in the case of *Chilvers v. The People*, 11 Mich., 43, the court said: "The object of a license is to confer a right that does not exist without a license." Within this definition, a mere tax upon the traffic, unless its payment confers some right that otherwise would not have existed, can in no sense be properly called a license. In this case it seems that the very act which imposed the tax repealed a prior law which forbade the traffic and declared it illegal.

Another case cited on this point is that of *Chilvers v. The People*, just referred to. The subject of con-

troversy in this case was an ordinance of the city of Detroit, by which ferries plying between that city and the Canada shore were charged twenty-five and fifty dollars, according to a specified scale, for license, and it was claimed against the ordinance that such exaction was taxation, and unconstitutional. But the court in its opinion said: "It is not a tax within the meaning of that term in the constitution. It is a price paid for a franchise, or public right vested in an individual." It is difficult to see how this case, especially, can be relied on to support the theory contended for, that licensing under our law is taxation, and within the operation of the constitutional provision above quoted.

In *State v. Hoboken*, 33 N. J. L., 280, the charter of Hoboken authorized the city "to regulate the building of vaults, and the laying of water and gas pipes in and under the streets." Under this authority an ordinance was passed, assessing applicants for the privilege of building vaults in front of their dwellings, a sum of money, and it was held not to be within the power conferred by the charter, nor within the usual police powers given to corporations for the maintenance of peace and good order, and was therefore void.

We have thus alluded, as briefly as practica. 'e, to all the principal authorities cited in support o the claim that, within the purview of the constitution the. money exacted for a license to traffic in intoxicating liquors, under our law, is a tax, and must therefore be imposed by a uniform rule. By turning to these cases it will be found that, with perhaps one or two exceptions, the question in each of them concerned the power of corporate authorities, under the charter or law by which they were governed, to require the payment of money for a license to engage in some particular business, or to do some particular thing otherwise prohibited, and made illegal. And the holding in each of

them but conforms to the general rule that, to justify such requirement, the power to make it must have been granted by the legislature to the corporation. And we think it will be further noticed that, although in several instances such exactions, where unauthorized, are regarded and spoken of as being in legal effect taxation, as they clearly are, *in not a single one* where the authority to impose them had been given are they held to fall within the general taxing power of the state, but within the ample power of police regulation, as was done in the above mentioned case of *Chilvers v. The People.*

. By the constitution of this state, the legislature, within certain specified inhibitions and limitations, is invested with full legislative power. And this power includes, as no one will deny, that of police regulation, which being neither defined nor specially limited, is practically left by the constitution to legislative discretion, so long as no right secured by that instrument is encroached upon. Taxation is also a legislative power, and is specifically mentioned in the constitution, but always in connection with the subject of revenue, for the support of the government generally, or some particular department or branch of it. And it is in such connection that we find the requirement of uniformity. This being so, we are led to conclude that this constitutional injunction has reference solely to taxation, pure and simple, according to the commonly accepted meaning of that term, for the purpose of revenue merely, and not those impositions made, incidentally, under the police power of the state, exerted either directly or by delegation, as a means of constraining and regulating what may be regarded as a pernicious or offensive act or business. And in this view we have the support of many adjudged cases, a few of which only will be referred to.

In *Baker v. The City of Cincinnati,* 11 Ohio State, 534,

it is said that, "a charge for a license may be made in view of the special inconvenience and expense to the government for the benefit of the individual who asks for the license. Things licensed may be such as should only be permitted under the regulation or supervision of public functionaries. The tax or charge may have reference to such regulation, or supervision. * * * The burden thus devolved on public officials, requiring perhaps an increase of their number, or compensation, * * * may justly authorize a charge beyond the mere expense of filling up a blank license."

And in *Thompson v. The State*, 15 Ind., 449, it was decided that a license fee of fifty dollars for the sale of liquor, was not a tax within the meaning of the constitutional provision requiring a uniform rate of taxation, which related to the general levy alone. In the words of the opinion: " Taxation was not the object of imposing it" (the license fee) " and the legislature was not bound to appropriate the proceeds to any object for which the state is forbidden to raise money by local or special taxation. It was imposed in the exercise of the rightful police power of the state, and is an incident of a legitimate police regulation. Hence it is not within the prohibition * * * of the constitution," against " local and special taxation for state purposes." To the same effect is *The Bank v. The City of New Albany*, 11 Ind., 139.

*The Board of Trustees of Falmouth v. Watson*, 5 Bush., 660, is an instructive case on this point. It appears that, by legislative grant, the board of trustees of Falmouth were given "the exclusive control and right to grant licenses for the sale, by retail, of all spirituous, vinous, and malt liquors within said town, or within one mile of said town," and the sale of such liquors without such license was prohibited. It was contended that the statute conferring this power upon the trustees,

so far as it authorized the exaction of a license fee out-
side of the town, was within the interdiction of a clause
of the state constitution, which provided that no man's
property should "be taken or applied to public use
without the consent of his representatives, and with-
out just compensation being previously made to him."
The court said: "Had the exercise of the power com-
plained of been the imposition of an ordinary tax
merely on the property of the appellee, situate with-
out the corporate limits of the town, for municipal
purposes, we should not doubt the correctness of the
objection; or even if the exaction of the sum in con-
troversy, in consideration of a trade license, had been
made for local revenue purposes alone, though not in
the usual form of taxation, we should regard it as
within the constitutional prohibition; for the legisla-
ture could not delegate to the corporation the right to
either license for a compensation or tax a privilege to
be enjoyed beyond its limits, except as a police regula-
tion, having reference to the comfort, safety, and wel-
fare of society within its local jurisdiction.  But in
our opinion the exaction of a fee of one hundred dol-
lars for the privilege of vending ardent spirits, in such
proximity to the town as to render its exercise liable
to affect the good order or peace of the local commu-
nity, did not infringe any constitutional right of the
appellee.  The privilege granted to him was one which
public policy requires should be subjected to such legal
restraints and regulations as will, as far as practicable,
prevent its abuse to the detriment of society.  The
legislature having the power to do this, properly dele-
gated that power to the local government of the com-
munity immediately interested."

In the case of *The People v. Thurber*, 13 Ill., 554, the
court, in considering the effect of a provision of the
constitution of that state which requires that the mode

of levying taxes should be by valuation, "so that every person shall pay a tax in proportion to the valuation of the property which he or she may have in his or her possession," and whether it applied to a certain license law, said: "It has never been doubted that the word *tax* as here used means the tax which is imposed on a person on account of the property which he has, and has never been held to deprive the legislature of the power to inhibit persons from exercising certain callings, franchises, or privileges without a license or authority for so doing, which they may withhold entirely, or until pecuniary compensation shall be paid into either the state, or some town, city, or county treasury." And in *City of East St. Louis v. Wehrung*, 46 Id., 392, it is said to be settled that "a license is not a tax in the constitutional meaning of that term." These cases seem to be directly in point, that a license fee proper is not a tax as ordinarily understood.

In *Anderson v. The Kerns Draining Co.*, 14 Ind., 199, the court, in construing a constitutional provision which declared that the legislature shall provide for a "uniform and equal rate of assessment and taxation," held that it did not apply to certain local taxes levied for draining purposes, and said that "it did not prohibit indirect taxation by way of licenses upon particular pursuits. Such indirect taxation may be made effectual as a police regulation." And in *Bright v. McCullough, Treas., etc.*, 27 Id., 223, it is said that this constitutional provision is a "restriction upon the otherwise discretionary powers of the legislature, and prescribes the rule for its government in authorizing the levy of taxes, and it must be governed by that rule, whether the levy be for the state at large, or for a minor subdivision. Indirect taxes, imposed not merely for the purposes of revenue, but in a restraint of a particular business or calling, or as a license on particular

pursuits, or as a mere police regulation, do not come within the spirit or meaning of the provision of the constitution referred to." To the same effect are *Commissioners of Ottawa Co. v. Nelson*, 27 Am. Repts., 101, and *Ash v. The People*, 11 Mich., 347.

Many other cases of like import are at hand and might be referred to, but these are enough to show that the idea of a license fee or imposition not being within the ordinary or constitutional signification of of the word "tax" is no new doctrine evolved now for the first time by this court to meet an exigency of this case, but that it is a well understood rule which the courts have constantly applied in dealing with questions similar to the one we are now considering. To our minds it is clear that the restriction relied on has no proper application to this case, and that the authority given by the act regulating the sale of spirituous liquors, is but a proper exercise of the police power of the state, of which, by the constitution, the legislature is made the sole custodian and dispenser, and not an exercise of the power of taxation. That regulation of a traffic, believed by the legislature to be pernicious in its effects upon society, and not the raising of revenue merely, is the chief design of the act, it would seem no man of intelligence can doubt, who reads it. It will be seen that a license cannot go out, as a matter of course, to whoever may apply, on payment of the required fee, but only when "deemed expedient" by the officers having the matter in charge, and on "the application by petition of thirty resident freeholders of * * * * the precinct where the sale of such liquor is proposed to take place, setting forth that the applicant is a man of respectable character and standing, and a resident of this state, and praying that a license may be issued to him." Sec. 1 of the act, chap. 50, Comp. Statutes, 333.

Section two provides that before any action shall be taken on such application at least two weeks notice must be given, " when, if there be no objection in writing made and filed * * * and all other provisions" (of the law) "have been fully complied with, it may be granted." If, however, there be any objection or protest filed, a hearing for the determination of the matter is provided for by the next two sections, and if it be proved that the applicant has violated any provision of the act within the space of one year, or that any former license to him has been revoked for any misdemeanor against the laws of this state, then the license shall be refused. Section six provides that before the license shall be granted the applicant must give a bond to the state with sureties in the penal sum of five thousand dollars, " conditioned that he will not violate any of the provisions of this act, and that he will pay all damages, fines, and penalties, and forfeitures which may be adjudged against him under provisions of this act."

Among the more prominent matters of regulation we find that by section eight, " Every person licensed as herein provided, who shall give or sell * * any intoxicating drinks to any minor, apprentice, or servant, under twenty-one years of age, shall forfeit and pay for each offense the sum of twenty-five dollars." By section ten, the sale to Indians, insane persons, idiots, and habitual drunkards, is prohibited under a penalty of fifty dollars. Section eleven provides that " All persons who shall sell or give away upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks, without having first complied with the provisions of this act, and obtained a license as herein set forth, shall for each offense be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars,

and not more than five hundred dollars, or be imprisoned not to exceed one month in the county jail, and shall be liable in all respects to the public and to individuals, the same as he would have been had he given bond and obtained license as herein provided." Section thirteen prohibits the sale of adulterated liquors, and provides a penalty of one hundred dollars for each offense. Section fourteen prohibits the sale or giving away of such liquors on election days and Sundays, under a penalty of one hundred dollars for each offense.   Section fifteen provides that " The person so licensed shall pay all damages that the community or individuals may sustain in consequence of such traffic; he shall support all paupers, widows, and orphans, and the expenses of all civil and criminal prosecutions growing out of, or justly attributed to his traffic in intoxicating drinks."   Section seventeen gives a right of action to counties and cities for the support of persons pauperized by intoxication, against those causing it by the sale or gift of liquor.   Section twenty-nine makes it the duty of venders "of malt, spirituous, or vinous liquors, under the provisions of this act, to keep the windows and doors of their respective places of business unobstructed by screens, blinds, paint, or other articles," and the failure to do so is made a misdemeanor, subjecting the offender to a fine of not less than twenty-five dollars, or imprisonment in the county jail not less than ten days, or both, at the discretion of the court, and the forfeiture of his license.

There are other matters of regulation in this act, but these will answer our present purpose, which is to show that, although a large license fee is required, the conclusion is irresistible, that the leading motive of the legislature in enacting the law could not have been the raising of revenue, but rather to thoroughly regulate, and as far as practicable suppress a traffic, the

tendency of which was believed to be productive of pauperism, vice, misery, and crime, to the great injury of the people of the state at large, and especially of the particular locality where it is carried on.    If revenue merely from such traffic, and not regulation, had been the object of this law, it is not at all probable that those desiring to engage in it would have been met by the many discouraging embarrassments which are here thrown in their way.

It is further claimed that the constitution is violated by sec. 4 of the act, in providing for an appeal to the district court from the decision of the county board. As we understand this provision, an appeal is allowed only from a decision of the board upon the question of whether the applicant for a license has been guilty of a violation of any of the provisions of the act within one year; or whether any former license issued to him has been revoked for a misdemeanor against the laws of this state, and not from their decision as to the advisability of licensing the traffic at all.  The determination of this latter question seems to be left by the first section to the sole discretion of the board of commissioners in counties, and to the municipal authorities in cities and villages.

Another objection urged to this law is that sec. 18 is a violation of sec. 6, art. I of the constitution, which guarantees the right of trial by jury.    We fail to see any merit in this point.    The section complained of simply provides what effect may be given to certain evidence in fixing responibility for injurious results of intoxication.    We think it is competent for the legislature to do this, upon the same principle that statutory effect is given to various kinds of evidence, such as historical works, books of science or art, entries, and other writings of persons deceased, books of account, notarial protests, etc.    It is certainly not an un-

usual exercise of power by the legislature, and as to it we know of no constitutional restriction. The effect of this provision is nothing more than an assertion of what shall be sufficient, if proved to the satisfaction of the court, to make out a *prima facie* case. No decision is cited by counsel and we know of none which sustains them in the position taken.

Still another ground of alleged unconstitutionality in this law is, that sec. 28 confers upon justices of the peace the pardoning power, whereas by sec. 13, art. V of the constitution, it can be rightfully exercised only by the governor of the state. The section in question makes intoxication a misdemeanor, and affixes as punishment therefor a fine of ten dollars and costs of prosecution, or imprisonment in the county jail not exceeding thirty days. And it provides that the magistrate before whom a conviction is had may remit any portion of such penalty and "order the prisoner to be discharged upon his giving information, under oath, stating when, where, and of whom he received the liquor which produced the intoxication, and the name and character of the liquor obtained."

In the first place we do not think that the authority here conferred can properly be classed as a pardoning power. It is not of the character of that given by the constitution to the chief magistrate of the state. It is a provision of the law excusing an act which it makes a misdemeanor, upon clearly specified conditions. Without these conditions are strictly complied with, the magistrate has no power to relieve the accused from any part of the penalty. One requirement is substituted for another. Not so, however, in the case of pardon under the provision of the constitution. In that, full power is given to the governor, and he may exercise it in his discretion, and for such reasons as to him may seem sufficient. To be pardoned, in the

proper sense of the term, is not a right given for a consideration to the individual by the legislature, but a free gift from the supreme authority, confided to the chief magistrate, and to be bestowed according to his own discretion.

The only remaining ground of constitutional objection to the law is, that it arbitrarily prohibits the sale of liquors within a strip of two miles around an incorporated city or village, while it may be licensed both within and without that limit. This provision violates no command of the constitution. It is general in its application to all territory of the state falling within such description, and is but an exercise of the police power intrusted to the legislature. It is referable to that principle which enables the legislature to prohibit liquor selling on Sundays and on days of elections, or within the vicinity of fairs, camp-meetings, and other gatherings of the people. It is the power exerted by the legislature of Kentucky, and recognized in *Board of Trustees of Falmouth v. Watson, ante,* in the provision that persons engaged in the retail of spirituous liquors within one mile of an incorporated town must have a license to do so from the proper officers thereof, although already licensed by the county authorities under another general law of the state.

The only remaining objection to the judgment to be noticed is, the alleged error of the court in ruling from the jury the license issued to the prisoner under a a prior statute, since repealed. It is conceded by counsel, and so the law is, that it is competent for the legislature to revoke a privilege given by a license. The citation of authorities is unnecessary on this point. But it is contended, very strenuously, that the rejected license had not been annulled, and that therefore it ought to have been admitted as a complete defense to the charge against the accused.

But was it the intention of the legislature, by the re-peal of the old law and the enactment of a new one, to revoke unexpired licenses? The answer to this ques-tion must be found in the new law, by which the repeal was effected, and under which this prosecution origi-nated. Looking to it, we find, first, that the repeal was absolute, and without saving terms, which, in all probability, would not have been entirely omitted had it been intended to preserve existing license privileges. While it may be conceded, as is claimed by counsel, that this omission of an affirmative saving provision will not of itself warrant us in holding that the legis-lature, by the mere repeal of the former law, intended the revocation of such privileges, we do find in the body of the new law satisfactory evidence of such in-tention. It is provided by sec. 11 that "All persons who shall sell or give away, upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks, *without having first complied with the provisions of this act, and obtained a license as herein set forth,* shall, for each offense, be deemed guilty of a misdemeanor," etc.

This act, as we have seen, went into operation on the first day of June, 1881, and by the above provision the entire traffic is, by the most expressive language, absolutely prohibited, except by persons "having first complied with the provisions of"—not some other law, but of—"*this act.*" Now suppose, for instance, that the traffic had been prohibited as above, without any provision for its legalization by the procurement of a license, would any one contend that effect could be given to an authority granted under a prior statute? Very clearly not. So we say that, the prohibition be-ing absolute, except upon certain specified conditions, those conditions must be observed or the traffic is ille-gal. We see no escape from this conclusion.

We have now carefully considered all of the objec-

tions urged to the enforcement of this law, and find them to be untenable. Were we acting in the capacity of law-makers, if our business were to determine what the law should be instead of what it is, possibly as to the point last noticed, and perhaps some others, we might believe it best to withhold our assent until some important modifications were made.· We might insist that privileges granted through former licenses should be protected, or at least not entirely disregarded by the new law; and also that a material distinction be, made in the amounts required from persons selling all kinds of intoxicating liquors, and those selling ale or beer alone. But these are matters purely of governmental· policy, intrusted by the constitution exclusively to the legislative department of the government, and with which the judiciary have not the slightest concern, so long as no right secured by the paramount law is invaded, except, when appealed to, to uphold and enforce the properly expressed will of the lawmaking power. This is a constitutional and valid law.

JUDGMENT AFFIRMED.