Zigler v. Menges *et al.*

Filed Nov. 8. 1889.

---

No. 13,866.

## ZIGLER *v.* MENGES ET AL.

DRAINAGE.—*Reclamation of Land.—Public Utility.*—The reclamation of wet lands and the draining of marshes and ponds is of public utility, and is conducive to public welfare, health and convenience.

SAME.—*Drainage a Public Benefit.—Local Tribunals.—Duty of.*—The Legislature having declared that the drainage of wet lands is a matter of public benefit, it is only the duty of the local tribunals to determine whether a particular ditch will be of public utility, or will be conducive to the public health, welfare and convenience. If the particular ditch will drain any considerable body of wet lands it is of public utility and benefit.

SAME.—*Police Power.— When Exercisible to Direct Drainage.*—Where the drainage of wet lands will promote the health, comfort and convenience

Zigler v. Menges et al.

of the public, the authority to direct it is exercisible by virtue of the police power. The drainage act is constitutional as a valid exercise of that power.

SAME.—*Assessments.*—*Benefit to Land-Owner Must be Shown.*—Assessments may be authorized without proving what particular citizens will be beneficially affected; but that the land-owner will receive a special benefit must be shown.

SAME.—*Ditch.* — *Expediency of Construction.* — *Commissioners.* — *Appeal.*— Whether it is practicable or expedient to construct a ditch upon the route proposed is determinable by the local authorities, and their decision is not subject to review or control by the courts.

SAME.—*Costs.*—*Appeal.*—*Remonstrant.*—*Petitioners.*—It is not error for the court to refuse to include costs made by remonstrant in the cost of constructing the ditch; nor to deny the remonstrant's motion to tax all costs of appeal against the petitioners, who have succeeded on many of the issues.

SAME.—*Description to Authorize Assessment.*—*Insufficiency of.*—*Finding.*—A finding that six acres of remonstrant's land will be benefited, no particular six acres to be benefited being stated, is not such a description as will authorize an assessment.

From the Elkhart Circuit Court.

*J. H. Baker, J. H. Defrees, Jr.,* and *H. C. Dodge,* for appellant.

*H. D. Wilson* and *W. J. Davis,* for appellees.

ELLIOTT, C. J.—The appellee petitioned for the construction of a ditch, and the appellant remonstrated against it. A special verdict was returned, of which this is the substance: The lands along the entire line of the proposed ditch, except for a distance of three hundred feet at the lower end, are wet and marshy. The natural trend of the land through which the ditch will run is such as to cause the surface water, when unobstructed, to flow from a southeast direction north and west, in the general direction of the ditch. Before the Lake Shore and Michigan Railroad was built, which was about the year 1852, the surface water from the lands along the line of the ditch, as well as the lands further south and east, flowed to a point near the terminus of the ditch and there accumulated. The sub-soil

at that point is of such a nature that the water sinks away in two weeks' time. In building the railroad the earth was thrown up on either side and an embankment was constructed on which the track was laid ; on either side of this embankment an excavation was dug, and these excavations are from two to four feet lower than the adjoining land. After the construction of the railroad the surface water from the lands of the petitioners and of the remonstrant, as well as from other lands, continued to flow in the direction and along and near the south line of the proposed ditch, and accumulated in the ditches or excavations along the railroad embankment, where it sank away in the ground. For many years before the petition for the ditch was filed, an old ditch existed along nearly the entire line of the proposed ditch, and into this old ditch the water from the surrounding lands flowed and was conducted to the excavations along the railroad embankment. The line of the proposed ditch is the only natural or artificial practical water-way for the flow of the water from adjoining lands, and there is no other practical outlet for such water except the excavations along the side of the embankment constructed by the railroad company. The proposed ditch will be of public utility, it will be conducive to the public health, convenience and welfare, and the proposed route is practicable. It has not a sufficient outlet in case of a freshet. Six acres of appellant's land will be benefited to the amount of twenty-four dollars. The benefit to the lands consists in making them dryer and better adapted to cultivation. The land of appellant, lying north of the railroad, will be damaged in the sum of one hundred dollars. The verdict also states that the lands of other persons named will be benefited, but we think it unnecessary to give names and details.

We are satisfied that facts are found which enable the court to adjudge that the proposed ditch will be conducive to the public health, convenience and welfare, and that it will be of public utility. Laying out of consideration the general

statements of the jury, we think facts appear which justify the conclusion the verdict declares. The reclamation of wet lands and the draining of marshes and ponds is of public utility and is conducive to public welfare, health and convenience. *Anderson* v. *Kerns Draining Co.*, 14 Ind. 199; *O'Reiley* v. *Kankakee, etc., Co.*, 32 Ind. 169; *Seely* v. *Sebastian*, 4 Oregon, 25; *Coster* v. *Tide Water Co.*, 18 N. J. Eq. 54, 66; *Springfield* v. *Gay*, 12 Allen, 612; *Wright* v. *Boston*, 9 Cush. 233; *Hagar* v. *Reclamation Dist.*, 111 U. S. 701. As said in *Ross* v. *Davis*, 97 Ind. 79: "It is not necessary, in order that the use may be regarded as public, that the whole community or any large portion of it may participate in it. If the drain be of public benefit the fact that some individuals may be specially benefited above others affected by it, will not deprive it of its public character." The community is benefited by anything that makes considerable bodies of land arable and adds to their taxable value, and so it is by anything that lessens disease. The Legislature has declared that the drainage of wet lands is a matter of public benefit and it has left to the local tribunals nothing more than the duty of determining whether a particular ditch will be of public utility or will be conducive to the public health, welfare and convenience. If the particular ditch will drain any considerable body of wet lands it is of public utility and benefit. *Coster* v. *Tide Water Co.*, *supra*; *O'Reiley* v. *Kankakee, etc., Co.*, *supra*. Judge COOLEY says: "Where any considerable tract of land, owned by different persons, is in a condition precluding cultivation, by reason of excessive moisture which drains would relieve, it may well be said that the public have such an interest in the improvement, and the consequent advancement of the general interest of the locality, as will justify the levy of assessments upon the owners for drainage purposes. Such a case would seem to stand upon the same solid ground with assessments for levee purposes, which have for their object to protect lands from falling

Zigler *v.* Menges *et al.*

into a like condition of uselessness." Cooley Taxation (2d ed.), 617.

Our own cases, already cited, refer the authority to direct the drainage of wet lands to the police power of the State, and in so far as the drainage does promote the health, comfort and convenience of the public, it is by virtue of this great power that the authority is exercised. The police power, it has been said, is " that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society." *Lake View* v. *Rose Hill Cemetery Co.*, 70 Ill. 191 (22 Am. Rep. 71). "All laws," says another court, "for the protection of the lives, limbs, health and quiet of persons, and the security of all property within the State, fall within this general power of the government." *State* v. *Noyes*, 47 Maine, 189. By our own and many other courts this doctrine has been affirmed. *Hockett* v. *State*, 105 Ind. 250 (55 Am. Rep. 201) ; *Eastman* v. *State*, 109 Ind. 278 ; *Wilkins* v. *State*, 113 Ind. 514; *Slaughter-House Cases*, 16 Wall. 36 ; *Civil Rights Cases*, 109 U. S. 3 ; *Smith* v. *Alabama*, 124 U. S. 465 ; *Nashville, etc., R. W. Co.* v. *Alabama*, 128 U. S. 96. The removal of causes that produce disease and serious discomfort does promote the health and welfare of the public, and in enacting a law providing for the removal of such causes no provision of the Constitution is violated in compelling private persons who receive a special benefit to bear the expense; on the contrary, in enacting such laws a high constitutional duty is discharged, and no private rights are invaded where special benefits accrue, although the expense is imposed upon the property of the citizens. In speaking of the police power, Judge COOLEY says : " Laws imposing on the owners the duty of draining large tracts of land which in their natural condition are unproductive, and are a source of danger to health, may be enacted under the same power, though in general the taxing power is employed for the purpose ; and sometimes land is appropriated under the eminent domain." Cooley Const.

Lim. (5th ed.) 734. A clear and vigorous statement of the law upon this subject is found in the case of *Donnelly* v. *Decker*, 58 Wis. 461 : " It would seem to be most reasonable," said the court in that case, " that the owner of the lands drained and reclaimed should be assessed to the full extent, at least, of his special benefits, for he has received an exact equivalent and a full pecuniary consideration therefor, and for that which is in excess of such benefits, should be paid on the ground that it was his duty to remove such an obvious cause of malarial disease and prevent a public nuisance. The duty of one owner of such lands is the duty of all, and in order to effectually enter upon and carry out any feasible system of drainage through the infected district, all such owners may be properly grouped together to bear the general assessment for the entire cost proportionably. Assessment in similar cases is not taxation." Mr. Tiedeman, in speaking of legislation compelling private property to bear the expense of drainage, says : " The constitutionality of such legislation has, as a reasonable exercise of the police power of the State, been generally sustained, on the general ground that the State may impose upon the owner the duty of draining his low lands, in consideration of the consequent increase in the value of his lands." Tiedeman Lim. of Police Power, 445.

As the drainage act is constitutional, because a valid exercise of the police power, and as the exercise of that power in itself implies that the purpose for which an assessment is directed is for the public good, the purpose is necessarily a public one. As the purpose is necessarily public in all cases where health, comfort and convenience are promoted, there can remain in such cases no other questions than such as relate to the procedure and the amount of the benefits or damages assessed. *Ford* v. *Ford*, 110 Ind. 89 (93). Wherever the reclamation or drainage of wet lands will promote health there is a constitutional warrant for levying assessments to pay the expense of the drainage of such lands, and, from the very

fact that it will accomplish this result, assessments may be authorized without proving what particular citizens will be beneficially affected. It is, in other words, not necessary to supplement proof of the fact that the drainage of a marsh or pond will conduce to public health or welfare by evidence of the number of persons who will be benefited. It is necessary, however, in order to authorize the levying of an assessment, to show that the land-owner will receive a special benefit. *Lipes* v. *Hand*, 104 Ind. 503. But it is one thing to be compelled to prove special benefits in order to justify special assessments, and quite another thing to be compelled to show who or what numbers will be benefited in health or comfort by a system of drainage.

We neither hold nor mean to hold that benefit to the property of an individual will warrant an assessment, for if the benefit is solely to private property irrespective of general or public considerations, no compulsory assessment would be valid, since one citizen can not be compelled to contribute to the improvement of another's property. If, however, it can be justly concluded from the nature of the system of drainage adopted that there will be a material element of public good in the result, then the purpose is a public one, and property may be assessed. Nor would it change the conclusion if a pond or marsh was wholly on the land of one of the citizens, for although he might be compelled to bear the greater part of the expense, or, indeed, the entire cost, it would be for the reason that his property received the principal benefit, and not because it was his duty to drain the pond, or marsh. Of course, if the property of such an owner received the whole of the special benefit, and no public purpose is subserved, it must bear the entire expense, but it is difficult to conceive a case in which this could happen, for the removal of a cause of disease or discomfort must necessarily benefit, in some degree, property in the vicinity. Where the element of public good exists there is authority to levy an assessment, but it is otherwise where there is

no such element in the case. If the propery-owner was bound
to remove from his land causes of disease placed there by na-
ture, it might well be held that he must bear the entire burden;
but he owes no such duty to the community, nor is he liable
to any one for injury arising from such a cause. An owner
of land is responsible for injuries resulting from the con-
struction of artificial swamps, or ponds; but, independently
of statutory regulation, he is under no duty, at his own
expense (although he may be compelled to pay the entire
benefit which accrues to his property), to drain natural ponds
or marshes. *Reeves* v. *Treasurer*, 8 Ohio St. 333.

In view of the findings of the jury, we can not hold that
the construction of the ditch will not be conducive to public
health, comfort and convenience. *Blizzard* v. *Riley*, 83 Ind.
300; *Kyle* v. *Miller*, 108 Ind. 90; *Meranda* v. *Spurlin*, 100
Ind. 380; *Ford* v. *Ford*, 110 Ind. 89. We must take the judg-
ment of the jury upon the facts, and the only question which we
are required to decide upon this branch of the case is, whether
the facts are sufficient to entitle the appellee to a judgment
declaring the work to be conducive to the public health and
welfare. We are not at liberty to draw inferences of an ev-
identiary character, for the facts found in the verdict are, as
said in *Locke* v. *Merchants' Nat'l Bank*, 66 Ind. 353, "the
inferential facts." The conclusions of the jury are conclu-
sions of fact, drawn from evidentiary facts, and these conclu-
sions of fact, and not the evidence, are the proper elements
of a verdict. *Blizzard* v. *Riley, supra; Hagaman* v. *Moore*,
84 Ind. 496; *Bennett* v. *Meehan*, 83 Ind. 566 (43 Am.
Rep. 78).

The facts which appear in the verdict bring the case within
the rule declared in *Heick* v. *Voight*, 110 Ind. 279, where it
was said: "That the work will either promote the public
health, or improve a public highway, or be of public utility,
is to be regarded as a legislative declaration that it is of such
a public character as to justify the exercise of the power of
eminent domain to the extent required in its accomplish-

ment." It was also said that : " It follows, necessarily, that if the finding be such as to affirm either of the propositions above stated, the construction of the drain is to be deemed a work of such a public character as to warrant its prosecution in the manner provided by law."

Whether it is practicable or expedient to construct a ditch upon the route proposed is a matter to be determined by the officers to whom the authority to locate ditches is entrusted. In *Heick* v. *Voight, supra,* it was said : " Whether the project was more comprehensive, or whether it embraced and affected more lands, than was necessary in order to accomplish the drainage of the petitioner's lands, in the cheapest and best manner, was a subject for the exclusive judgment of the commissioners of drainage. Their determination of that subject was not reviewable by the court." " In this regard," said the court in *Anderson* v. *Baker,* 98 Ind. 587, " the decision of the commissioners of drainage is analogous to the decision of the common councils of cities upon the question of benefits from the construction of sewers ; it is final in each particular proceeding, in the absence of fraud." The same doctrine was explicitly asserted in *Meranda* v. *Spurlin, supra,* and in *Markley* v. *Rudy,* 115 Ind. 533. The rule declared in these cases is no more than the proper application of the general principle, asserted in a great number of cases, that where a discretion is conferred upon local authorities it can not be reviewed or controlled by the courts. *Weaver* v. *Templin,* 113 Ind. 299, and cases cited ; *Kirkpatrick* v. *Taylor,* 118 Ind. 329. In *Ford* v. *Ford, supra,* it was said : " We find in the record of the trial in the circuit court the following admission : ' The ditch in controversy, proposed to be constructed, will be conducive to public health, convenience and welfare. The route of said ditch as proposed * * if constructed, would be the best route for a ditch to drain the lands of said Callender Ford, and would thoroughly drain and dry the same.' With this admission in the record, there remained no controverted question of fact for trial, except

whether the assessment made against Callender Ford's land was in proportion to the benefits to be derived therefrom." So it is here, the ditch, as the record shows, will be conducive to the public health, convenience and welfare, and, therefore, there is, as we have said, but one question for trial. We have looked into the cases in other courts and find many sustaining the rulings in our own. *Hunter* v. *Mayor, etc.*, 5 R. I. 325; *East Saginaw, etc., R. R. Co.* v. *Benham*, 28 Mich. 459; *Dingley* v. *City of Boston*, 100 Mass. 544; *Aken* v. *Parfrey*, 35 Wis. 249. In the case last cited it is held that a verdict need not refer to matters which the statute does not require the jury to decide, but, if it does, the finding on such a point will be treated as surplusage and will not vitiate the verdict. Where, however, the verdict does find upon matters which it is made the duty of the jury to pass upon, the finding can not be disregarded by the court. *Wilmington, etc., Co.* v. *Dominguez*, 50 Cal. 505.

The jury did decide all the questions presented by the remonstrance and properly before them, and the court did right in following the verdict in its judgment upon the points which we have discussed. The appellant brings before us questions which affect only his rights, and we can consider no others. If the proceedings are effectual against the attacking or objecting party they will be upheld. We can not, therefore, consider what other parties, if any, are affected by the proceedings.

The circuit court may in the proper case remand a drainage case to the board of commissioners for further proceedings, and this is such a case. *Sunier* v. *Miller*, 105 Ind. 393; *Bryan* v. *Moore*, 81 Ind. 9.

We can not hold that the court erred in refusing to include costs made by the remonstrant in the cost of constructing the ditch. *Board, etc.,* v. *Fullen*, 118 Ind. 158. Nor do we think that the court erred in denying the appellant's motion to tax all costs of appeal against the appellees, for they succeeded on many of the issues.

Zigler *v.* Menges *et al.*

In the absence of the evidence, we can not say that there was any error in assessing benefits and damages. The verdict shows that there was a benefit, and this controls, for we can not, on the face of the verdict, adjudge that there was no benefit, and we have no data to guide us except such as the verdict supplies.

It was not necessary for the jury to specifically describe the tract of land which the ditch would drain. The assessment is laid upon the land benefited, and not merely upon the land actually drained, for the benefit may extend beyond the specific parcel which is reclaimed. *Baker* v. *Clem*, 102 Ind. 109. The land on which the assessment is levied should be described with reasonable certainty, but this is all that is required. *Boatman* v. *Macy*, 82 Ind. 490. There is, however, no such description of the appellant's land as will authorize an assessment, and for this reason the verdict can not be sustained. The finding is, that six acres of appellant's land will be benefited, but what six acres will be benefited is not stated.

Judgment reversed.

MITCHELL, J., did not participate in the decision of this case.

Filed Nov. 19, 1889.