### LINE FENCE LAW INVALID.

Circuit Court of Medina County.

JOHN P. BEACH v. BERT ROTH ET AL, AS TRUSTEES OF SHARON
TOWNSHIP, AND SIMON DRESSLER.*

Decided, May, 1907.

*Constitutional Law—Fence Law Unconstitutional.*

Section 4243, Revised Statutes, providing for the building of line fences
and the assessment of the cost thereof upon adjoining proprietors,
is unconstitutional.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The only question involved in this case is whether Section
4243 of the Revised Statutes is obnoxious to the Constitution.
The section reads:

"If either party fail to build the portion of fence assigned
to him, the trustees shall, upon the application of the aggrieved
party, sell the contract to the lowest responsible bidder, to fur-
nish the labor and material and build such fence according to the
specifications to be proposed by the trustees, after advertising
the same for a period of ten days by setting up posters in three
public places in the township. As soon as the work shall be
completed in conformity with the sale, and to the satisfaction
of the trustees. they shall immediately certify the costs to the
township clerk and if not paid within the thirty days, the town-
ship clerk shall certify the same to the auditor of the county,
the amount such fence sold for, adding the proportionate amount
of cost and expenses of such sale, together with a correct de-
scription of each piece of land upon which same is assessed, and
the auditor shall place the same upon the tax duplicate to be
collected as other taxes are collected, and the trustees shall at
the same time certify the amount due each trustee and clerk for
their services rendered in such proceedings, and the auditor may
anticipate the collections of same and draw orders for the pay-
ment of such amount out of the county treasury."

This section read in connection with Section 4242, and other
sections of Title 5, Chapter 3 of the statutes, authorizing the

---

*Affirmed without opinion, *Roth et al* v. *Beach*, 80 Ohio State, 746.

trustees of townships to determine what line fences shall be built outside of the municipal corporations, and in case the owners of the land bounded by the line where such fence is to be built, fail to build the portion of fence assigned to such land owner, the trustees may cause the fence to be built, and the land owner may be compelled to pay for the same, as taxes upon his land.

It is urged on behalf of the plaintiff that this is in contravention of Section 19 of the Bill of Rights (the first article of the Constitution) ; that section reads in part as follows: "Private property shall ever be held inviolate, but subservient to the public welfare."

It is said that under this section, the private property of one land owner may be subjected to appropriation to the extent necessary to construct a fence for the exclusive private use and benefit of an adjoining land owner, and not only that, but that the property of the owner may be taken to pay the tax assessed for the building of a fence, when such fence is exclusively for the benefit of a single individual and adjoining land owner.

This claim seems to us to be sound. A farm may be owned by A, an adjoining farm is owned by B, and A is so situated that he has no occasion for a line fence for the purpose of controlling his own domestic animals, or for any other purpose, excepting it be to protect his lands from the domestic animals of B. The policy of the law of Ohio is that each owner of domestic animals must himself see that they are kept within proper boundaries. Why then, should A in the case supposed, be required to yield any part of his land, or have his land subject to a tax, simply for the benefit of B? It seems to us that it is a violation of the constitutional provision hereinbefore quoted, that "private property shall ever be held inviolate, but subservient to the public welfare." Certainly no public welfare is to be subserved by the construction of a line fence in the case supposed.

In *Shaver* v. *Starrett*, 4 Ohio St., 498, it is said by Judge Thurman:

"The constitutionality of the statutory provisions for the establishment of township roads, has lately been questioned, upon the ground that the land appropriated for such roads is

not taken for a *public* use. If this were so, the invalidity of the statute would be manifest, since the Constitution provides (Article I, Section 19), that 'private property shall ever be held inviolate,' and the only exception to this rule is, that it shall be 'subservient to the public welfare.' It follows that it can not be taken for a mere private use; nor could it, I apprehend, were there no express constitutional provision upon the subject; and this for the plain reason, to say nothing more, that no such power has been delegated to the assembly.''

In that case the court held the statute, which provided for the taking of private property for a township road, to be constitutional, but upon the ground that such road was for a *public* use.

In *Reeves* v. *Treasurer of Wood County et al*, 8th Ohio St., 333, it is held that an act authorizing the trustees of townships to establish water-courses, etc., was in contravention of the constitutional provision referred to.

The statute under consideration authorized the construction of ditches, the language being:

''That the township trustees shall have power, on the application of any party, to enter upon any land in their township to view any water-course or proposed ditch for the purpose of draining any land held by more than one person, and to cause said ditch or water-course to be located and set apart to each person interested in such ditch or water-course, such portion of the same to be by him opened, as shall be deemed by them right and just, according to the benefit to be derived by such person from the opening of said ditch or water-course; and also to assess against him such portion of the expenses and damage hereafter provided for, as according to right and justice he ought to pay.''

And in the opinion at page 347, Judge Brinkerhoff uses the following language:

''If the trustees had been authorized to locate and provide for the opening of a ditch only in case they found the same to be demanded by, or conducive to the public health, convenience, or welfare, why then their action, under legitimate authority, would be but an ordinary and legitimate exercise of the right of eminent domain. But this statute prescribes no such condition, no such rules of official duty or limit to official discretion; and a ditch may be located and opened upon the lands of individual

property owners solely for purposes of private interest irrespective of the public welfare, without infringing any provision of this act, either express or implied.''

''Is this an infringement upon the inviolatability of private property, taking of private property for private use?''

The land occupied by the ditch and its banks is not, it is true, *wholly* appropriated.  The owner may still use the ditch itself for purposes of irrigation, for watering stock, or perhaps make it serve the purposes of a fence.  He may grow timber and shrubbery on its banks.  But his dominion over it, his power of choice as to the uses to which he will devote it, are materially limited; in short other parties acquire a permanent easement in it.  An easement is property; and to the extent of such easement it is clear to us, that private property is taken, within the meaning and spirit of the constitutional prohibition.''

In *McQuillen* v. *Hatton*, 42 Ohio St., 202, Judge Follett uses this language in the opinion: ·

''The use that will justify the taking of private property by the power of eminent domain, is the use by or for the government, the general public or some portion of it; and not the use by or for particular individuals, or for the benefit of certain estates.  The use may be limited to the inhabitants of a small locality, but the benefit must be in common, and not to a very few persons or estates.

''The prosperity of each individual conduces, in a certain sense, to the public welfare; but this fact is not a sufficient reason for taking other private property to increase the prosperity of individual men.

''The draining of marshes and ponds may be for the promotion of the public health and so become a public object but the draining of farms to render them more productive, is not such an object.''

See also *Railroad* v. *Keith et al*, 67 Ohio State, at page 279, and following.

In *Zigler* v. *Menges*, 16 American State Reports, 357, there is a very full discussion as to the distinction between the public use for which property may be taken, and the private use for which it may *not* be taken, and in the notes to this case, as re-

ported in the volume referred to, numerous authorities are quoted, and among other things this is said:

"It is not necessary, in order that a use may be regarded as public, that it should be for the use and benefit of the whole community, or any large portion of it. It may be for the inhabitants of a small or restricted locality; but the use and benefit must be in common, not to particular individuals or states."

On the part of the defendants the case of *Tomlinson* v. *Bainaka et al,* 70th Northwestern Reporter, 155, is cited.

The act construed in that case was attacked on the ground that it was unconstitutional; the section providing that "private property shall ever be held inviolate," was not construed, and whatever the holding in that case (which was an Indiana case), we fell confident that we are following the decisions of our own Supreme Court in holding as we do that the act under consideration violates Section 19, Article I, of the Constitution of Ohio.

It follows, therefore, that the plaintiff is entitled to the injunction prayed for in the case, and the same is allowed.