Weaver *et al. v.* Templin, Trustee, *et al.*

No. 13,474.

WEAVER ET AL. *v.* TEMPLIN, TRUSTEE, ET AL.

DRAINS.—*Repairs.— Township Trustee.— Discretionary Power.—Act of 1883 Constitutional.*—Section 7 of the act of 1883 (Acts of 1883, p. 180), vesting in township trustees a discretionary authority to determine when repairs of public drains are necessary, is constitutional and valid, even conceding that it does not require notice of the intention to order repairs.

SAME.—*Cost of Repairs.—Appeal from Trustee's Assessment.*—The authority conferred by such act upon the circuit court on appeal to determine the cost of repairs and removal of obstructions, includes the authority to determine whether the assessment which the appeal assails was made to defray such cost.

SAME.—*Notice.*—Although, in cases of this character, notice of some kind is required preparatory to a final assessment of benefits, the Legislature may prescribe what it shall be and how it shall be given.

SAME.—*Extent of Trustee's Authority to Make Repairs.*—The authority of the township trustee, under the act of 1883, is to restore the ditch as nearly as practicable to its original condition; he can not construct a new ditch, or enlarge and improve an existing one, except in so far as the repairing and removal of obstructions necessarily enlarge or improve it.

SAME.— *When Assessments May be Defeated.*—Where the trustee, under color of making repairs and removing obstructions, departs materially from the original specifications, widens and deepens the ditch, expending in the work a sum largely in excess of its original cost, he exceeds his authority, and assessments levied by him will not be sustained as against land-owners who attack them by appeal in the manner provided by the statute.

From the Howard Circuit Court.

*M. Bell, W. C. Purdum, J. F. Elliott* and *L. J. Kirkpatrick*, for appellants.

*J. C. Blacklidge, W. E. Blacklidge, B. C. H. Moon, J. O'Brien* and *C. C. Shirley*, for appellees.

ELLIOTT, J.—Templin, as township trustee, and assuming to act under the authority of section seven of the act of 1883 relating to drainage, did work upon a public ditch and levied an assessment upon lands benefited by the work. From

an assessment laid upon his land, Weaver unsuccessfully prosecuted an appeal to the circuit court.

The constitutionality of section seven of the act referred to is challenged, but, in our opinion, unsuccessfully. So far as the provisions of that section vest a discretionary authority in township trustees to determine when repairs are necessary, they are unquestionably valid. The Legislature has power to confer upon the officers of public corporations the authority to conclusively determine when repairs of streets, highways, drains and the like are necessary, and this power may be exercised by the Legislature without requiring notice to be given by the municipal authorities of the intention to order the repairs.

It is obvious that some officer or body must be invested with this discretionary power, or else no substantial progress could be made, and confusion would result. If each particular assessment presented the question as to whether it was necessary or expedient to make repairs of public highways or drains, we might have not only various, but conflicting decisions upon the same question.

It has long been the rule that municipal authorities have power to determine when streets shall be improved or repaired, and there is no reason why this settled general principle should not apply to public drains. The question as to the necessity or expediency of repairing a public drain is not one to be tried in judicial proceedings, but is one committed solely to the discretion of the officer designated by law, so that, if it were conceded that the statute does not provide for a trial of that question, or for notice to enable the land-owner to meet it, the concession would not affect the validity of the law. It has been held in very many analogous cases that a discretionary power of this nature may be conferred upon public officers, and that, when so conferred, courts can not control its exercise. *Leeds* v. *City of Richmond,* 102 Ind. 372 ; *Ricketts* v. *Spraker,* 77 Ind. 371 (379) ; *City of Kokomo* v. *Mahan,* 100 Ind. 242 ; *City of Fort Wagne* v. *Cody,* 43

Ind. 197; *Mayor, etc.,* v. *Roberts,* 34 Ind. 471 : *Macy* v. *City of Indianapolis,* 17 Ind. 267; *Smith* v. *Corporation of Washington,* 20 How. 145; *Davis* v. *Mayor, etc.,* 1 Duer, 451; 2 Dillon Munic. Corp. (3d ed.), 686. The principle which we here assert was affirmed in a drainage case. *Anderson* v. *Baker,* 98 Ind. 587.

The authority conferred upon the circuit court on appeal to determine the "cost of such repairs and removal of obstructions," includes the authority to determine whether the assessment which the appeal assails was made to defray the cost of repairs and removal of obstructions. This conclusion is supported by at least two reasons :

*First.* The township trustee had authority, under the act of 1883, to make repairs and remove obstructions, and if he did other work he transcended his authority, and acted without jurisdiction.

*Second.* The cost of removing obstructions and making repairs necessarily requires an investigation into the character of the work done, since, without such an investigation, it can not be determined for what work the land can be assessed.

It is only necessary to say of the first proposition, that the township trustee, in proceeding under the statute, exercised a mere naked statutory power, and if he transcended the authority conferred he acted beyond his jurisdiction; and where he does so act, he can not create a valid lien against the property of the land-owner. Of the second proposition it is enough to say, that the court can not determine what the repairs cost until it has first determined whether the work done constituted repairs or was an enlargement or improvement of the drain. No step can be intelligently taken without first determining what the work was and whether it was within the statute.

It is well settled, that in cases of this character the Legislature may prescribe what the notice shall be and how it shall be given. Although notice of some kind is required preparatory to a final assessment of benefits, it rests with

the Legislature to determine what it shall be. The statute under immediate examination does provide for notice, and does give an aggrieved land-owner an opportunity of securing a judicial hearing, for it confers upon him a right of appeal. Even if it did not provide for notice prior to the appeal it would be valid. The principle which rules here was thus stated in *Flournoy* v. *City of Jeffersonville*, 17 Ind. 169 (79 Am. Dec. 468) : " The stage of proceedings at which that hearing shall take place; the manner, in short, in which the cause of a party shall be got before the judicial tribunal, so it is not an unreasonably inconvenient and embarrassed one, is with the legislative power." This principle has been asserted and applied in other cases. *Ray* v. *City of Jeffersonville*, 90 Ind. 567; *New Albany, etc., R. R. Co.* v. *Connelly*, 7 Ind. 32.

In very many decisions, extending over a period of nearly thirty years, it has been held that municipal corporations may make improvements and repairs of streets without notice, and that the Legislature may declare what questions shall be tried on appeal. *City of Indianapolis* v. *Imberry*, 17 Ind. 175; *Board, etc.*, v. *Silvers*, 22 Ind. 491; *Palmer* v. *Stumph*, 29 Ind. 329; *City of Fort Wayne* v. *Cody, supra; Taber* v. *Ferguson*, 109 Ind. 227, and cases cited ; *Taber* v. *Grafmiller*, 109 Ind. 206.

There has been, therefore, a practical exposition of the Constitution by the people, the Legislature and the judiciary, and, in such a case as this, even had there been grave doubt at the outset, this practical construction has now the effect of a positive rule. *Board, etc.*, v. *Bunting*, 111 Ind. 143; *Bruce* v. *Schuyler*, 4 Gilm. 221; *People* v. *Supervisors*, 100 Ill. 495; *Rogers* v. *Goodwin*, 2 Mass. 475; *Stuart* v. *Laird*, 1 Cranch, 299; *Minor* v. *Happersett*, 21 Wall. 162; *State* v. *French*, 2 Pinney (Wis.), 181.

We need not, however, further discuss this question, as it has been directly decided. *State, ex rel.*, v. *Johnson*, 105

Ind. 463; *Fries* v. *Brier,* 111 Ind. 65; *Trimble* v. *McGee,* 112 Ind. 307.

As we have said, the authority of the township trustee, under the act of 1883, is a statutory one, and extends only to the work of making repairs and removing obstructions; and, under this authority, he can not construct a new ditch, nor can he enlarge and improve an existing one, except in so far as the repairing and removal of obstructions necessarily improve or enlarge it. We suppose it to be quite clear that, if, in the work of repairing and removing obstructions, the channel was incidentally deepened or widened, it could not be justly said that a new ditch was constructed; but, on the other hand, we suppose it to be equally clear that the trustee could not, under pretence of repairing and removing obstructions, construct a larger ditch or one different from that provided for by the original specifications. The question, therefore, is, did the trustee construct a substantially new ditch or one materially different from that provided for in the specifications originally prepared?

We think the question must be determined by taking the original specifications as the guide, for, if they are substantially adhered to, there is no ground for asserting that the trustee has transcended his authority, even though in the work of repairing and removing obstructions the ditch has been enlarged and improved; but if there is a material departure from the original specifications, then there can be no other conclusion than that the trustee has exceeded his authority. If he has kept within his authority, the assessments levied by him may be sustained; if he has exceeded it, they must be adjudged without effect as against the landowner who attacks them by appeal in the manner provided by law.

The special finding of the court states that the ditch was out of repair; that it was repaired and obstructions removed at a cost of $2,529.82, which was paid out of the township treasury. It is, however, stated that the ditch was cut two

·feet wider at the bottom for the first half mile, four feet wider for the next mile, and for the remainder of its length five feet wider; and that the line of the ditch for one-fourth of a mile was changed and a new ditch cut; that the ditch " as repaired is from ten to twenty-five feet wide at the top;" that the original specifications provided that the ditch for one and one-fourth miles should be three feet wide at the bottom and eight feet wide at the top; for three miles further it should be eight feet wide at the top; for a distance of three-fourths of a mile five feet wide at the top; and for the remainder of the distance eight feet wide at the top.

There are, also, these further findings: " The total cost of the construction thereof was $1,437.60," and " That in the repair of said drain said trustee, regardless of the specifications in pursuance of which it was originally constructed, removed the obstructions, consisting of bumps and muck, so that the drain could be brought to a uniform grade at the bottom and the water carried off from the low places along the bottom of said ditch; that the improvement as made cost more than it would to have improved the ditch according to the original specifications."

We are unable to resist the conclusion that the trustee, under color of making repairs and removing obstructions, has changed and improved the ditch in several essential particulars. The ditch has been greatly widened and deepened, and, doubtless, much improved, since the amount expended is almost twice the cost of the original ditch. The inference from the facts stated is that the trustee has improved the ditch instead of repairing it.

Under authority to repair there can be no enlargement and improvement, except in so far as the work of repairing necessarily enlarges and improves. " Repair," says the Supreme Court of Pennsylvania, " means to restore to sound or good condition, after injury or partial destruction." *Pittsburgh, etc., R. W. Co.* v. *Pittsburgh,* 80 Pa. St. 72.

The authority of the township trustee was to restore the

ditch as nearly as practicable to its original condition, not to enlarge or improve, no matter how much the improvement may have been needed, nor how much property-owners may have been benefited.

The township trustee has the burden, for he seeks to enforce a statutory power, and one of an extraordinary nature, and it was incumbent upon him to show that all the work that was done by him was done in restoring the ditch, as nearly as practicable, to its original condition.   It was for him to show that the assessment is one he had authority to make; and the special finding, in the place of showing this, shows that he enlarged and improved the ditch instead of restoring it to the condition it was in when first completed.

Judgment reversed, with instructions to restate the conclusions of law and enter judgment in favor of the appellants.

Filed Dec. 28, 1887; petition for a rehearing overruled Feb. 14, 1888.