GIFFORD DRAINAGE DISTRICT ET AL. *v.* SHROER ET AL.

[No. 17,285. Filed September 22, 1896.]

DRAINAGE.—*Public Utility.*—*Police Power.*—The reclamation of wet lands, and the drainage of ponds and marshes is of public utility, and is for the benefit of the public health and welfare; and it is by .virtue of the police power that the authority of the State is exercised to enact drainage laws.

SAME.—*Public Utility.*—The legislature has no power to enact a law authorizing one person to improve his own, or the lands of another, by drainage or otherwise, and compel the other persons benefited to pay therefor, unless the public is also benefited.

SAME.—*District Drainage Act.*—*Constitutional Law.*—Section 22, of the District Drainage Act of 1893, section 5739, Burns' R. S. 1894, which authorizes the formation of a drainage district, upon the signing of an agreement by two-thirds or more in number of the owners of land, owning in acreage two-thirds or more of the land in the proposed district, but which does not require that the proposed drainage shall benefit the public health, or otherwise be of public utility, and does not even require that the lands within the proposed district shall be swamp or wet lands, is unconstitutional and void.

From the Jasper Circuit Court. *Affirmed.*

*S. P. Thompson,* and *Elliott & Elliott,* for appellants.

*M. F. Chilcobe, Stuart Bros. & Hammond,* and *J. H. Douthitt,* for appellees.

MONKS, C. J.—Appellants, other than the Gifford Drainage District, commenced this proceeding under section twenty-two of the district drainage act of 1893. Acts of 1893, pp. 316-328, (R. S. 1894, sections 5718-5742).

Appellees were the owners of lands in the proposed district who had not signed the agreement provided for in said section. After the classification roll had been confirmed by the board of commissioners, as required by said section, appellees appealed to the court below, where, on their motion, the proceeding was dismissed upon the ground that said act was unconstitutional. The question of the constitutionality of said act is presented by the assignment of errors.

It has been uniformily held by this court that the reclamation of wet land and the drainage of ponds and marshes is of public utility, and is for the benefit of the public health and welfare. *Zigler* v. *Menges,* 121 Ind. 99, and cases cited on p. 102, 16 Am. St. Rep. 357.

So far as the drainage of wet lands will promote the health of the public, it is by virtue of the police power of the State that the authority is exercised to enact such laws. *Zigler* v. *Menges, supra.*

It is settled law in this State that the legislature has no power under the constitution to enact a law authorizing one person to improve his own, or the lands of another, by draining or otherwise, and compel the persons benefited to pay therefor, unless the public is also benefited thereby. *Deisner* v. *Simpson,* 72 Ind. 435, 441, 442; *Anderson* v. *The Kerns Draining Co.,* 14 Ind. 199, 77 Am. Dec. 63; *Tillman* v. *Kircher,* 64 Ind. 104; *Chambers* v. *Kyle,* 67 Ind. 206, 210;

*McKinsey* v. *Bowman*, 58 Ind. 88; *Anderson* v. *Baker*, 98 Ind. 587, and cases cited on p. 589; *Neff* v. *Reed*, 98 Ind. 341, 344; *Wishmier* v. *State*, 97 Ind. 160, 162; *Ross* v. *Davis*, 97 Ind. 79, 83, 85; *Zigler* v. *Menges*, 121 Ind. 99, 102, 106, 16 Am. St. 357, and note on p. 365; *Logan* v. *Stogsdale*, 123 Ind. 372, and cases cited on pp. 375, 376, 8 L. R. A. 58. See also Cooley's Const. Lim., 530–532; *Fleming* v. *Hall*, 73 Ia. 598; *Jenal* v. *Green Island Nav. Co.*, 12 Neb. 163.

In *Anderson* v. *The Kerns Drainage Co.*, *supra*, this court, in speaking of what is to be regarded as a public object in taking private property, said: "The construction of canals and railroads and public highways, has been held such. *Dronberger* v. *Reed*, 11 Ind. 420. So has the improvement of streets in a city, for they are public highways. *Snyder* v. *Town of Rockport*, 6 Ind. 237. So has the drainage of marshes and ponds for the promotion of the public health. But the drainage of a man's farm simply to render it more valuable to the owner, would not be a work of public utility in the constitutional sense of the term; and a corporation organized and acting for such a purpose, would no more be acting in a public undertaking than would a company organized and acting for the cleaning up of men's farms and putting them in a better state of cultivation, than the proprietors were willing to do, though the public and the adjoining proprietors might be in a substantial degree benefited by the operation. And forcible taxation to pay for the same would hardly be tolerated."

In *Zigler* v. *Menges*, *supra*, this court said: "Whenever the reclamation or drainage of wet lands will promote the health there is a constitutional warrant for levying assessments to pay the expense of the drainage of such lands. *  *  *  * We neither hold nor mean to hold that benefit to the property of an individ-

ual will warrant an assessment, for if the benefit is solely to private property irrespective of general or public considerations, no compulsory assessment would be valid, since one citizen cannot be compelled to contribute to the improvement of another's property."

In *Logan* v. *Stogsdale, supra,* it was said by this court: "It is true that in the preamble, and in some of the provisions in the body of the act, there is an indirect assertion that the use for which authority is conferred to seize private property is a public one, but such an assertion, even if made in the clearest terms, cannot rescue the act from condemnation, for it is not within the power of the Legislature to determine what is a public use within the meaning of the Constitution. Whether the use is a public one is a judicial question, and not a legislative one.   *   *   A private use cannot be transformed into a public one by a mere legislative declaration."

It is not strictly correct, however, to say that in all cases where the taking of private property will benefit the public, or promote the public interest in any way, that the taking will be considered for the public use.

Judge Cooley in his work on Const. Lim., at p. 532, said concerning this question: "It is certain that there are very many cases in which the property of some individual owners would likely to be better employed or occupied to the advancement of the public interest in other hands than their owners, but it does not follow from this circumstance alone that they may rightfully be dispossessed. It may be for the public benefit that all the wild lands of the State be improved and cultivated, all the low lands drained, all the unsightly places beautified, all dilapidated buildings replaced by new; because all these things do give an aspect of beauty, thrift and comfort to the country

and thereby to invite settlement, or increase the value of lands and gratify the public taste; but the common law has never sanctioned an appropriation of property based on these considerations alone, and some further element must therefore be involved before the appropriation can be regarded as sanctioned by our constitutions. The reason of the case and the settled practice of free governments must be our guides in determining what is and what is not to be regarded as a public use; and that only can be considered such where the government is supplying its own needs or furnishing facilities for its citizens in regard to those matters of public necessity, convenience or welfare, which, on account of their peculiar character, and the difficulty—perhaps impossibility—of making provision for them otherwise, it is alike proper, useful and needful for the government to provide."

It follows that unless a general law in this State for the drainage of wet lands, makes proper provision for the determination in each proceeding of the question whether the particular ditch or system of drainage will be of public ultility or promote the public health, welfare and convenience, it will be unconstitutional and void. Under any other rule the property of an individual could be assessed with benefits to construct a drain for the improvement of another's property, where there was no public benefit whatever.

The district drainage law of 1893, Act 1893, pp. 316-328 (R. S. 1894, sections 5718, 5742), provides two methods for forming districts; one by petition and one by agreement. Section one of the act (section 5718, R. S. 1894), requires that the petition must be signed by a majority of the adult owners of land, owning in the aggregate one-third of the area of the lands in the proposed district, and allege that said ditch or ditches,

when established, will improve the public health, or be otherwise of public utility.

Section twenty-two (section 5739, R. S. 1894), requires that the agreement shall be signed by two-thirds or more in number of the owners of land, owning in acreage two-thirds or more of the land in the proposed district. But there is no provision in said act that in any proceeding commenced by agreement, under section twenty-two, that the same shall benefit the public health or be otherwise of public utility. Neither is there any provision in said act for the determination of said question at any time, where the proceeding is commenced under said section.

It is not even required that the lands within the proposed drainage district be swamp or wet lands. It is true the section provides, that the agreement shall be submitted to the county surveyor, who shall, "as soon thereafter as may be practicable, carefully consider all questions involved, by personal inspection of the land of said district or otherwise as he may see fit. And if said county surveyor shall become satisfied in his own mind that said lands require a combined system of drainage for agricultural purposes, * * * * then he shall endorse his approval upon said agreement and file the same with the accompanying plat in the county commissioners' court."

But this does not authorize the surveyor to determine whether the proposed system of drainage will be of public utility or promote the public health, or require that he decide these questions before he files the agreement. Whether the county surveyor could be empowered to determine such questions, we need not and do not decide. Lands might require a combined system of drainage for agricultural purposes, and at the same time such system of drainage not benefit the public

health or be of public utility. Drainage to benefit the lands for agricultural purposes alone would be for the purpose of private gain or advantage, and would merely subserve private interests without reference to those of the public. *In re* Theresa Drainage Dist., 90 Wis. 301.

*In re* Theresa Drainage Dist., *supra,* the provision of the statute was: "If it shall appear that the proposed drain or drains, ditch or ditches * * * * is or are necessary or will be useful for the drainage of the lands proposed to be drained thereby, *for agricultural, sanitary or mining purposes,*" the court, in that case, said, "there is in the entire statute no expression or intimation that it was any part of the consideration upon which the improvement should be authorized that it should either be necessary or desirable to promote any public interest, convenience, or welfare. No doubt, such an improvement would be useful to some, or perhaps many, private owners of land by way of increasing the usefulness and value of their lands. But that is merely a private advantage. It interests the public indirectly and remotely, in the same way and sense in which public interest is advanced by the thrift and prosperity of individual citizens. *Donnelly* v. *Decker,* 58 Wis. 461. * * * But it is urged that the term 'sanitary purposes' comprehends and imports the idea of the public health. If so, it might save this statute. * * It will be seen that the word (sanitary) is purely of abstract meaning. It is utterly devoid of any suggestion of numbers or of public or private relation. It imports neither. * * * * Without some qualifying word it is inoperative to designate the purpose as a public one or as in the interest of public health. * * * It must be held that it does not provide for a taking for public use. It could not lawfully provide for a taking

Gifford Drainage District *et al. v.* Shroer *et al.*

for any other than a public use. It is entirely invalid."

The mere fact that a system of drainage would render lands tillable, more productive, or increase their value, does not authorize the exercise of either the police power or the power of eminent domain. *Anderson* v. *Kerns Drainage Co., Kinnie supra;* v. *Bare,* 68 Mich. 625; Cooley's Const. Lim., section 532.

In proceedings commenced under section twenty-two, the statute attempts to confer the power to assess the property of those who have not signed the agreement or in any manner consented thereto, whether the same will benefit the public health or be of public utility or not. It assumes, therefore, to authorize the assessment of special benefits to one man's property for the benefit of another, even though the proposed drain will not be of public utility and will not promote the public health.

It is clear, for the reasons given, that said act, so far as it authorizes the construction of drains by proceedings instituted under the provisions of section twenty-two, is unconstitutional and void. If said section required all the landowners in the proposed drainage district to sign the agreement, it would probably not be invalid for the reason given, because the amount to be contributed by each landowner would be fixed by the agreement.

In proceedings by petition under section one of said act, provision is made for the determination of the question whether the proposed ditch or ditches would benefit the public health or be of public utility, and what we have said does not, therefore, apply to proceedings under that section.

Judgment affirmed.