## BEMIS *v.* GUIRL DRAINAGE COMPANY ET AL.

[No. 22,543.   Filed June 4, 1914.]

1. STATUTES.—*Title.—Multifariousness.—Expression of Subject.*— The title to the drainage corporation act of 1913 (§§8233b, 8233e1 Burns 1914, Acts 1913 p. 433), is not open to the objection that it is multifarious, and at the same time not sufficiently broad to cover the tribunal provided in the body of the act for determining the question of public utility and for assessing benefits and damages, and therefore does not violate §19, Art. 4 of the State Constitution, providing that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title. p. 43.

2. CONSTITUTIONAL LAW.—*Eminent Domain.—Due Process of Law. —Appropriation of Property Without Compensation.*—The 5th amendment to the Federal Constitution, forbidding that one be deprived of his property without due process of law, and the taking of private property for public use without just compensation, merely restricts legislation by Congress, and is not a limitation upon the legislative authority of the State. p. 43.

3. CONSTITUTIONAL LAW.—*Eminent Domain.—Due Process of Law. —Appropriation of Property Without Compensation.—Nature of Guaranty.*—The constitutional guaranties of personal and property rights are not absolute, but are held and enjoyed by individual members of society subject to the paramount right of the State to appropriate or modify them when necessary in the exercise of the police power, the power of eminent domain, or the taxing power. p. 44.

4. CONSTITUTIONAL LAW.—*Police Power.—Taxation.—Eminent Domain.*—The police power controls and regulates the enjoyment of personal and property rights on the principle that they must be so exercised as to permit an equal enjoyment in others, and, not ordinarily involving the taking of private property for a public use, does not demand that compensation be made as a condition to its rightful exercise; and is distinguishable from the power of

taxation and of eminent domain in that taxation is exercised upon the theory that the value of the taxes exacted is returned indirectly in benefits derived by the taxpayers from the government in exact proportion to the amount of the taxes imposed, while the power of eminent domain requires for its exercise compensation for the property taken. p. 44.

5. DRAINS.—*Statutes.—Constitutional Law.—Police Power.*—Statutes providing for the drainage or protection of wet lands, or lands subject to overflow, are enacted by authority of the police power on the theory that parcels of land constituting drainage or reclamation districts are so situated towards each other as to create a mutual dependence and natural community justifying compulsory joint improvement. p. 45.

6. DRAINS.—*Statutes.—Constitutionality.—Appropriation of Property.—Taxation.*—As a rule drainage and reclamation laws, though an offspring of the police power, incidentally involve both the power of eminent domain and the taxing power, and hence, in determining their validity, require the application of the constitutional limitations of those powers, in that the property taken must be for a public use, and not for the mere economic benefit resulting in common to the various owners in the district affected, that the taxing power must be delegated for a public purpose, and that due process of law must be provided in the exercise of both powers. p. 46.

7. DRAINS.—*Statutes.—Constitutional Law.—Public Use.*—Drainage statutes declaring that when the drainage or reclamation of wet lands or lands subject to overflow will promote the public health, public welfare or convenience, improve or benefit a public highway or highways, or be of public utility, the same will be a public use justifying the delegation and exercise of the powers of eminent domain and taxation, and making provision for the determination of whether proposed work thereunder is for the public use, and for notice and hearing on the question of benefits to be assessed, and compensation for property taken or damaged, are constitutionally valid exercises of the legislative authority. p. 47.

8. CONSTITUTIONAL LAW.—*Legislative Authority.—Delegation of Powers.*—The legislature may delegate the power to drain and reclaim swamp lands to local governmental divisions of the State, or to drainage districts or companies organized for that purpose. p. 47.

9. CONSTITUTIONAL LAW.—*Drains.—Due Process of Law.—Notice of Preliminary Proceedings.*—While notice is essential to jurisdiction over the person and property of owners whose property it is sought to subject to an assessment for drainage construction, and to satisfy the requirement of due process of law, stat-

utes providing for such work are not unconstitutional in failing
to require notice to a property owner of the initial or every inter-
mediate step in the proceeding leading to the assessment, where
provision is made for notice and opportunity to be heard before
an impartial tribunal before the assessment becomes final and
conclusive.   p. 48.

10. CONSTITUTIONAL LAW.—*Due Process of Law.—Eminent Do-
main.—Notice of Proceedings.*—The rule that due process of law
does not require notice of the initial proceedings, including the
appointment of appraisers, applies where property is taken under
the eminent domain as well as where an assessment of benefits
is involved, but, since compensation is required by the Constitu-
tion to be made for property so taken, notice and opportunity
to be heard on that question are essential.   p. 48.

11. CONSTITUTIONAL LAW.—*Due Process of Law.—Eminent Do-
main.—Exercise of Power.*—Notice to the owner of property to be
affected is not essential to a determination of whether a par-
ticular improvement shall be made, or the particular property
taken, since such questions are political in their nature and the
exercise of power in this respect rests in the exclusive control
and direction of the legislature, or in administrative or executive
bodies to which the authority may be delegated by the legis-
lature.   p. 48.

12. CONSTITUTIONAL LAW.—*Due Process of Law.—Eminent Do-
main.—Hearing on Appointment of Appraisers.*—The appointment
of appraisers in proceedings for drainage construction, or other
public improvements, is an executive or administrative function,
and notice and hearing on such appointment are not essential to
due process of law, especially where provision is made for a re-
view of the assessments on appeal.   p. 49.

13. EMINENT DOMAIN.—*Proceedings.—Review.—Public Character
of Use.*—Although it is the general rule, that the determination
of the public character of the utility or use of an improvement,
involving the powers of eminent domain and taxation by assess-
ment, is a legislative or political one in which notice and hearing
is not essential to due process of law, the determination of such
question is reviewable by the courts in cases clearly showing an
appropriation for a private purpose in a particular instance.
p. 49.

14. DRAINS.—*Establishment.—Hearing on Utility.—Notice.*—The
drainage corporation act of 1913 (§§8233b-8233e1 Burns 1914,
Acts 1913 p. 433), sufficiently provides for notice and hearing be-
fore the appraisers on the question of the public utility of drain-
age construction contemplated under its provisions.   p. 51.

15. DRAINS.—*Statutes.—Construction.—"Shall so Find".*—In §15 of
the drainage corporation act of 1913 (§8233p Burns 1914, Acts

Bemis *v.* Guirl Drainage Co.—182 Ind. 36.

1913 p. 433), providing that if the appraisers find that the proposed work will be of public convenience or welfare, or will benefit the public health, etc., "they shall find that said proposed work is of public utility, and the boards of commissioners and courts shall so find upon such facts when construing this act", the words "shall so find" are to be construed as "may so find", since a literal interpretation would make the provision an invasion of the authority of the courts, and thus would affect the validity of the act. p. 52.

16. CONSTITUTIONAL LAW.—*Drains.—Special Privileges.—Right of Appeal in Drainage Proceedings.*—Section 15 of the drainage corporation act of 1913 (§8233p Burns 1914, Acts 1913 p. 433), is not objectionable as violating the privileges and immunities provisions of the Federal and State Constitutions, on the theory that it gives the petitioner a right of appeal from the decision of the appraisers on the public utility of the proposed work and denies such right to others affected by the work, since, if it incidentally favors those urging the improvement as against a class opposing it, a reason justifying the classification exists in the promotion of such public work. p. 52.

17. STATUTES.—*Validity.—Effect of Partial Invalidity.*—An entire act is not destroyed by the invalidity of a portion that may be stricken out. p. 53.

18. APPEAL.—*Right of Appeal.—Nature of Right.*—The right of appeal is purely statutory and may be given or withheld as the legislature sees fit. p. 53.

19. DRAINS.—*Statutes.—Constitutionality.—Limited Right of Appeal.*—The provision of §21 of the drainage corporation act of 1913 (§8233v Burns 1914, Acts 1913 p. 433), that on appeal from the assessment made by the appraisers, "the only question tried shall be to determine whether appellant's lands are benefited" by the improvement "and if so, what should be assessed against said lands", conflicts with the intent that the question of damages may also be reviewed, as expressed in other portions of the act, and is an unwarranted and arbitrary discrimination against persons affected by the question of damages, but its invalidity does not destroy the whole act, since it is obvious that the act would have been passed without such restriction. p. 54.

20. CONSTITUTIONAL LAW.—*Due Process of Law.—Drainage Act.— Appraisers.*—The appraisers provided for in the drainage corporation act of 1913 (§§8233b-8233e1 Burns 1914, Acts 1913 p. 433), to assess the damages and benefits of a proposed drain, constitute a tribunal that satisfies the requirement of due process of law. p. 55.

21. CONSTITUTIONAL LAW. — *Distribution of Powers. — Judicial Power.—Drainage Act.*—The drainage corporation act of 1913

(§§8233b-8233e1 Burns 1914, Acts 1913 p. 433), does not violate §1, Art. 7, of the State Constitution vesting the judicial authority of the State in the courts.  p. 56.

22.  EMINENT DOMAIN.—*Delegation of Legislative Powers.*—The legislature may delegate authority to condemn an existing drain and incorporate it in a new scheme of drainage or reclamation, and to assess the damages therefor.  p. 56.

From Clay Circuit Court; *John M. Rawley,* Judge.

Action by James Bemis against the Guirl Drainage Company and others to enjoin proceedings for drainage construction.  From a judgment for defendants, the plaintiff appeals.  *Affirmed.*

*A. W. Knight,* for appellant.
*McNutt, Hutchison & Shattuck,* for appellees.

Cox, C. J.—Appellant sued in the lower court to enjoin proceedings instituted under the act approved March 10, 1913 (Acts 1913 p. 433, §§8233b-8233e1 Burns 1914), to construct and maintain a system of drainage and reclamation of lands from floods, consisting of a levee, seven drains, and two flood gates.  When the suit was brought the proceedings had reached a stage where the county commissioners had appointed appraisers as they were authorized to do by §13 (§8233n Burns 1914) of the act.  The drainage company, the individual incorporators of it, the petitioners for the appointment of appraisers, the appraisers and the board of commissioners were all made parties defendant.  A several demurrer by each of these defendants to appellant's complaint was sustained and, upon his refusal to plead further, the court rendered judgment against him for costs.  From this judgment he appeals and assigns as error the ruling of the court on demurrer to his complaint.

The complaint alleged in substance that certain of the appellees took steps under the act of 1913, *supra,* to organize the appellee drainage company and thereafter through its board of directors filed with the auditor of Clay County a petition addressed to the board of commissioners of the coun-

ty for certain reclamation and drainage work which the company was organized to make. This petition was set out in the complaint and averred the organization of the company, described the location and character of each particular part of the proposed system of reclamation and drainage, averred that it was all in Clay County, that the petitioners whose names were signed to it constituted a majority of the owners of the land to be protected, affected, drained, reclaimed and improved and that they were also the owners of two-thirds in acres of all of such lands and that the improvement would be of public utility; it prayed the board to appoint appraisers according to the law to inquire into and determine the public utility of the proposed work, to assess benefits and damages which might result from the construction of the work and to assess damages for all appropriations which might be necessary to be made in the process of construction of the work. The complaint then alleged that the petition was presented to the board on July 18, 1913, while it was in regular session and that the board acting thereon entered a finding to the effect that, having heard the evidence, it found that the facts set out in the petition were true and that appraisers ought to be appointed, and an order appointing appellees Weber, Cullen, and Weideroder, who were asserted to be qualified, as appraisers to determine the public utility of the proposed work and to assess benefits and damages which would result from the proposed work and the appropriations therefor; that these persons named as appraisers accepted the appointment; that the appellee drainage company, the incorporators and petitioners were about to notify the appraisers to meet and begin their work; that appellant was a resident taxpayer and owned land in the district affected by the proposed work which was in a high state of cultivation, all capable of being tilled and valuable for farming purposes and of such elevation that it was not affected by flood waters; that the proposed work would destroy numerous natural and artificial watercourses which

then adequately drained the land of appellant and others into Eel River, and many of which were public ditches constructed under the laws of the State and paid for by assessment of the lands of appellant and others; that the plan proposed contemplated the diversion and union of certain of these existing drains into one artificial outlet alleged to be wholly inadequate to carry the water during times of ordinary and especially during times of heavy rainfall, and that thereby the flow of the water would be impeded and backed upon the lands of appellant whereby he would be irreparably damaged in numerous particulars alleged; that the proposed work would cause a public nuisance in that it would cause more than 3,000 acres of land adequately drained, under cultivation, and densely populated to become marshy and unhealthy during a large part of each year; that appellees would, unless restrained by the court, do all the acts contemplated by law, the act of 1913, *supra*, toward the completion of the proposed work and would declare the improvement to be of public utility, assess benefits and damages, issue bonds for money to do the work and place the amounts of the benefits assessed on the tax duplicates for collection as other taxes are collected; that thereby a cloud would be cast on appellant's title and irreparable damage would result to him by the construction of the work as averred; that the act of 1913 in question makes no provision for a valid assessment and payment of damages which appellant would suffer; that it makes no provision for notice to appellant or other persons of a hearing on the question of the public utility of the proposed improvement; that it makes no provision for notice on the hearing of the petition and appointment of appraisers; that appellant was not made a party to the proceeding but that the same was *ex parte* and that appellant is denied due process of law and his day in court by the law; that the proposed work will not be of public utility but a private enterprise for the sole purpose of benefiting the lands of the incorporators and petitioners;

that the act of 1913 contravenes numerous provisions of the State and Federal Constitutions and is wholly invalid and that appellees are therefore proceeding and threatening to proceed without authority of law. A temporary restraining order and a perpetual injunction was the prayer of the complaint.

The grounds of demurrer were that the court had no jurisdiction of the appellees, or of the subject-matter of the action and that the complaint did not state facts sufficient to constitute a cause of action.

Counsel for appellant in the points stated in his brief asserts with the broadest generality that the act in question violates many constitutional provisions. We have found great difficulty in finding in appellant's brief the specific application of these general assertions of unconstitutionality to particular provisions of the act. So far as we are able to discover constitutional objections to particular provisions of the act, they are given consideration.

The first of these in logical order is the claim that the title of the act is multifarious and at the same time not broad enough to cover the tribunal provided in the body of the act for determining the question of public utility and for assessing benefits and damages and that the act is therefore rendered void by §19, Art. 4 of our State Constitution which provides that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title. A glance at the title shows at once that this claim is unfounded. *State* v. *Closser* (1913), 179 Ind. 230, 99 N. E. 1057, and cases there cited.

2. The contention is presented that the act is, in certain of its material and essential provisions, in contravention of the clauses of the 5th amendment to the Federal Constitution forbidding that one be deprived of property without due process of law and the taking of private property for public use without just compensation. This

amendment is not a limitation on State legislation but restricts legislation by Congress only. *Barrett* v. *State* (1911), 175 Ind. 112, 93 N. E. 543, and cases there cited; *School Town of Windfall City* v. *Somerville* (1914), 181 Ind. 463, 104 N. E. 859; *Fallbrook Irrigation Dist.* v. *Bradley* (1896), 164 U. S. 112, 158, 17 Sup. Ct. 56, 41 L. Ed. 359.

It is further claimed, the act violates the provisions giving the constitutional guaranties of due process of law for the protection of personal and property rights found in the 14th amendment of the Federal Constitution and in §12 of the Bill of Rights (Art. 1, §12), of our State Constitution. And in connection with this claim it is contended that the act also infringes that provision of the State Constitution found in §21 of the Bill of Rights (Art. 1, §21, Constitution), that no man's property shall be taken by law without just compensation, and, except in case of the State, without such compensation first assessed and tendered. The constitutional guaranties of personal and property

3. rights are not absolute, for all private rights however fundamental are held and enjoyed by individuals as members of organized society subject to the paramount right of the State, the embodiment of society, to appropriate them or modify them when actual necessity or the public welfare requires it. This dominant right of the State is ordinarily classified under three heads, the police power, the power of eminent domain and the taxing power. They are all incident to the sovereignty of the State and in the structure of government are committed to the legislative department. The police power controls and regulates the

4. enjoyment of personal and property rights on the principle that they must be so exercised as to permit an equal enjoyment in others. It is the power to legislate for the common welfare and under it, to that end, persons and property are subjected to restraints and burdens to secure the general comfort, health and prosperity. In its broadest sense it has aptly been said to be the residual power

of sovereignty lodged in the legislative body after shearing off the powers of taxation and the eminent domain. Ordinarily it does not involve the taking of private property for a public use, in the constitutional sense, and does not, therefore, demand as a condition of its rightful exercise that compensation be made. In the exercise of the power of taxation it is the theory that the value of the taxes exacted is returned indirectly in the benefits derived by the taxpayers from the government and that the benefits thus indirectly conferred are in exact proportion to the amount of the taxes imposed, or, when the tax is laid as a special assessment against property to defray the cost of a local public improvement it is exacted in proportion to the benefit accruing to the property. In the employment of the eminent domain, however, compensation must be returned for property taken for a public use. McGehee, Due Process of Law 201-378.

It has long been settled in this State that statutes of the character of the one before us for the drainage or protection of wet lands or lands subject to overflow are enacted

5.   by authority of the police power. *O'Reiley* v. *Kankakee Valley Draining Co.* (1869), 32 Ind. 169; *Zigler* v. *Menges* (1889), 121 Ind. 99, 22 N. E. 782, 16 Am. St. 357; *Gifford Drainage Dist.* v. *Shroer* (1896), 145 Ind. 572, 44 N. E. 636; *Lake Shore, etc., R. Co.* v. *Clough* (1914), *post* 178, 104 N. E. 975, 105 N. E. 905. See, also, *Coster* v. *Tide Water Co.* (1866), 18 N. J. Eq. 55; *Hagar* v. *Reclamation Dist.* (1884), 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; *Wurts* v. *Hoagland* (1885), 114 U. S. 606, 5 Sup. Ct. 1086, 29 L. Ed. 229; *Fallbrook Irrigation Dist.* v. *Bradley, supra;* McGehee, Due Process of Law 258, 265; Freund, Police Power §§441, 442; 5 Ency. U. S. Sup. Ct. Rep. 612. The application of the police power to the formation of drainage and reclamation districts is on the theory that parcels of land may be so situated toward each other as to create a mutual dependence and a natural community

which will justify a compulsory joint improvement; and that the exercise of the police power consists in applying to this community the same principle of majority rule which is recognized as a matter of course, for local purposes in neighborhoods constituting political subdivisions. The primary benefit flows always to all parcels of lands involved, while a distinct public benefit other than an economic one to the particular district concerned may or may not be involved. Freund, Police Power §442.

In this State, however, and as a general rule elsewhere such laws provide that a public benefit must be shown and laws for the compulsory drainage or reclamation of lands on the sole ground of economic benefit result-

6.

ing in common to the various owners in the district have not been sustained as a valid exercise of legislative authority. But this conclusion, apparently, has been reached through the fact that it was deemed that the eminent domain was involved incidentally, and also, the taxing power where the cost of the improvement was required to be paid by special assessments on the lands affected, both of these sovereign powers requiring as a basis for their legitimate exercise a public use, and the latter a resulting benefit for the taxes specially assessed. *Anderson* v. *Kerns Draining Co.* (1860), 14 Ind. 199, 77 Am. Dec. 63; *Zigler* v. *Menges, supra; Gifford Drainage Dist.* v. *Shroer, supra,* and cases there cited. As a rule drainage and reclamation laws which have been enacted in this State, while declared to be the offspring of the police power, have incidentally involved both the power of eminent domain and the taxing power, and so doing have required the application of the constitutional limitations of those powers in the determination of the validity of such laws. In so far as private property is authorized to be taken it must be for a public use and in so far as the taxing power is delegated it must be for a public purpose, and the enactment must provide due process of law in the exercise of both powers. These laws have, with practical

7. uniformity, as has the one under consideration, declared that the drainage or reclamation of wet lands and lands subject to overflow when such work will either promote the public health, the public welfare or convenience, improve or benefit a public highway or highways, or be of public utility, will be a public use justifying the delegation and exercise of powers of eminent domain and taxation. And such declarations that the use shall be deemed a public one if in a particular instance one or more of these facts are found, have always been determined to be within the legislative authority and constitutionally valid and not subject to the imputation of taking private property for a private use or without compensation where provision is made for a determination whether the particular drain will, in either of the respects designated by the legislature, be stamped with the necessary public character, and for notice and a hearing on the questions of the compensation for property taken or damaged and the amount of benefits to be assessed. *Anderson* v. *Kerns Draining Co., supra; O'Reiley* v. *Kankakee Valley Draining Co., supra; Tillman* v. *Kircher* (1878), 64 Ind. 104; *Chambers* v. *Kyle* (1879), 67 Ind. 206; *Wishmier* v. *State* (1884), 97 Ind. 160; *Ross* v. *Davis* (1884), 97 Ind. 79; *Anderson* v. *Baker* (1884), 98 Ind. 587; *Heick* v. *Voight* (1887), 110 Ind. 279, 11 N. E. 306; *Zigler* v. *Menges, supra; Perkins* v. *Hayward* (1890), 124 Ind. 445, 454, 24 N. E. 1033; *Poundstone* v. *Baldwin* (1896), 145 Ind. 139, 44 N. E. 191; *City of Huntington* v. *Amiss* (1906), 167 Ind. 375, 79 N. E. 199.

8. As the legislature, exercising the powers of sovereignty, has the power to drain and reclaim swamp and overflowed lands directly or by its own agents, it may delegate the authority to local government subdivisions of the State, or to drainage districts or companies created for that purpose, and these companies or districts are held to be *quasi*-public corporations. 14 Cyc. 1026, and cases there cited; *State, ex rel.* v. *Board, etc.* (1902), 60 L. R. A. 161, 169, note.

Specific objection is presented to the constitutional validity of the act of 1913, *supra,* on the ground that as no provision is made for notice and hearing on the questions of the sufficiency of the petition for the improvement and the appointment of appraisers in a proceeding to result in appropriation of property and a local assessment, the act denies due process of law. While notice is essential to give jurisdiction over the person and property of owners whose property it is sought to subject to an assessment for a public improvement of this character and thereby satisfy the requirement of due process of law, it is not required that the property owner shall be notified of the initial or every intermediate step in the proceeding leading to an assessment against his property. It is sufficient if provision is made for notice and opportunity to be heard before an impartial tribunal before the assessment becomes final and conclusive. *Millikan* v. *Crail* (1912), 177 Ind. 426, 98 N. E. 291, and cases there cited; 1 Page and Jones, Taxation by Assessment §125; 2 Page and Jones, Taxation by Assessment §727; 1 Elliott, Roads and Sts. (3d ed.) §614; 2 Elliott, Roads and Sts. (3d ed.) §699. The rule that due process of law does not require notice of the initial proceedings including the appointment of appraisers applies where property is taken under the eminent domain as well as where an assessment of benefits is involved. No constitutional provision forbids the taking of private property for a public use, but compensation for property so taken is required by the Constitution and due process of law requires that it be determined and awarded according to the law of the land. Notice and opportunity to be heard on the question of compensation for property taken or damaged is therefore essential. But upon all questions relating to the exercise of the power of eminent domain which are political in their nature and rest in the exclusive control and direction of the legislature and which it may delegate to an administrative or executive

body, may be determined without notice to the owner of the property to be affected. Whether the particular improvement shall be made, or the particular property taken, are questions of this character and the owner is not entitled to a hearing thereon as a matter of right. 1 Elliott, Roads and Sts. (3d ed.) §§224, 355, 356; 2 Lewis, Eminent Domain (3d ed.) §567; *Weaver* v. *Templin* (1888), 113 Ind. 298, 14 N. E. 600; *Garvin* v. *Daussman* (1888), 114 Ind. 429, 16 N. E. 826, 5 Am. St. 637; *Hughes* v. *Parker* (1897), 148 Ind. 692, 48 N. E. 243. The appointment of appraisers 12. in a proceeding of this character is an executive or administrative function and, while due process of law requires a fair and impartial tribunal to assess compensation and benefits, the general rule is, although the decisions are conflicting, that notice and hearing on such appointment is not essential to due process of law. And this rule cannot be deemed objectionable when the law provides for a review of the assessments on appeal. *Collins* v. *Laybold* 1914), *post* 126, 104 N. E. 971; *City of Indianapolis* v. *Hawkins* (1913), 180 Ind. 382, 103 N. E. 10; 2 Lewis, Eminent Domain (3d ed.) §567; 1 Elliott, Roads and Sts. (3d ed.) §357.

It is further contended by counsel for appellant that where the powers of eminent domain and taxation by local assessment are involved in a drainage proceeding like 13. the one before us and the subject-matter is delegated by the legislature to local authorities or tribunals, the determination of the circumstantial public necessity of the work or its public utility or use in the particular instance is a judicial function which demands notice and a hearing on that question to provide due process of law. And, it is claimed, the act of 1913, *supra,* does not make such provision. While statutes of this character in Indiana have usually made provision for notice and a hearing on this question, the practice has not been uniform. The general rule is, as we have seen, that the question is a legislative or polit-

ical one and that a notice and hearing on it are not essential
to due process of law in its determination by the tribunal
to which the decision is delegated. But the determination
is subject to a review by the courts in cases clearly showing
an appropriation for a private purpose in a particular in-
stance. 1 Elliott, Roads and Sts. (3d ed.) §§212, 213,
224, 391; 2 Lewis, Eminent Domain (3d ed.) §567; 3 Dillon,
Mun. Corp. (5th ed.) §§1036-1038; Cooley, Const. Lim. (7th
ed.) 777, and cases cited; *Richland School Tp.* v. *Overmyer*
(1905), 164 Ind. 382, 73 N. E. 811; *Town of Rensselaer* v.
*Leopold* (1886), 106 Ind. 29, 5 N. E. 761; *Pittsburgh, etc.,
R. Co.* v. *Town of Wolcott* (1904), 162 Ind. 399, 404, 69 N.
E. 451; *Dronberger* v. *Reed* (1859), 11 Ind. 420; *Jefferson-
ville, etc., R. Co.* v. *Daugherty* (1872), 40 Ind. 33; *Tyson* v.
*Washington County* (1907), 78 Neb. 211, 110 N. W. 634, 12
L. R. A. (N. S.) 350; *State* v. *Jones* (1905), 139 N. C. 613,
52 S. E. 240, 2 L. R. A. (N. S.) 313; *Stout* v. *Hopewell*
(1855), 25 N. J. L. 202; *People* v. *Adirondack R. Co.* (1899),
160 N. Y. 225, 54 N. E. 689; *Adirondack R. Co.* v. *New York*
(1900), 176 U. S. 335, 349, 20 Sup. Ct. 460, 44 L. Ed. 492;
*Zimmerman* v. *Canfield* (1885), 42 Ohio St. 463; *Emig* v.
*Commissioners* (1894), 5 Ohio Dec. 459. In the case of
*Zimmerman* v. *Canfield, supra,* which was a drainage case,
no notice had been given to any of the interested landowners
on any question up to the time that the commissioners had
found in favor of the improvement and to a claim that con-
stitutional rights were invaded, the court said: "So far the
proceedings are preliminary. The state has delegated to the
commissioners so much of her power of eminent domain as
is necessary to determine whether the construction of the
ditch is so far a public necessity, as that it is demanded by
considerations of public health, convenience or welfare.
There is nothing in the constitution of our state which guar-
anties to the owner of lands traversed by a ditch a trial by
jury, or other judicial investigation, to determine upon its
necessity or whether it will conduce to the public good.

\* \* \* The commissioners, in determining this preliminary question of the necessity of appropriating lands for the purposes of a ditch, are called to the exercise of political and not judicial powers. It is a question rather of public policy than of private right. \* \* \* It is not upon the question of the appropriation of lands for public use, but upon that of compensation for lands so appropriated, that the owner is entitled, of right, to a hearing in court and the verdict of a jury." But if the rule were as claimed by appellant it would not follow that the act must be held to be constitutionally invalid. It is provided in §13 (§8233n Burns 1914), that the board of appraisers appointed by the board of commissioners "shall hear the evidence offered by any interested person upon any and all questions upon which it may have power to determine." It is provided in §§13, 14 and 15 (§§8233n, 8233o, 8233p Burns 1914), that a time and place shall be fixed for the appraisers to meet to determine the questions lodged with them; that the owners of lands liable to be affected, shall have notice of this "time and place, when and where the appraisers will begin the examination of lands, and the assessment of benefits and injuries thereto"; that at the time and place so fixed the appraisers shall meet and shall first examine the lands and roads which in their judgment will be affected, and determine whether the work will be of public utility and, following a determination of this question, they shall assess damages and benefits. It is provided that the notice may be general and addressed to the public, but shall be by personal service or by copy at the last usual place of residence of resident owners whose lands are affected, and by publication or personal service of nonresidents. It is also provided that the application for appointment of appraisers or notice served upon the auditor shall be sufficient notice to the county. The particular objection to the statute on the question of notice is that the notice provided for is not a notice of a hearing on the question of public utility.

Taking all of the provisions together, it is obvious that they are not subject to the objection. They provide both for notice and a hearing before the appraisers on this question.

It is provided in §15, *supra,* that if the appraisers "find that said proposed work will be of public convenience or welfare, or will benefit the public health, or any public road or roads, they shall find that said proposed work is of public utility, and the boards of commissioners and courts shall so find upon such facts when construing this act." Counsel for appellant urges the claim that this is an invasion by the legislature of the right to have this question judicially determined. If a judicial determination of the question of public necessity or use in the particular case should be considered essential to the validity of the law, this provision would not impair the right. It cannot be controverted that it is entirely within the legislative authority as the repository of the State's sovereign power of eminent domain to declare generally that a drain which would serve any of the purposes named would be a public use and the provision in effect does no more than this. This is the conclusion of the writer of this opinion, but a majority of the court is of the opinion that this particular provision is an invasion of the authority of the courts and so affects the validity of the act as to require it to hold the words "shall so find" to mean "may so find". *Sisson* v. *Buena Vista County* (1905), 128 Iowa 442, 104 N. W. 454, 70 L. R. A. 440. It is provided in §15, *supra,* of the act that "if the appraisers find the proposed work not to be of public utility, they shall forthwith file with the auditor of said county a report thereof, and the auditor shall fix a date within thirty (30) days thereafter for the board of commissioners to hear and determine the question of public utility, and the auditor shall give notice of the time so fixed for such hearing, by publication once in some newspaper of general circulation, published in the county, at least ten (10) days before the time so fixed, and shall call

the board of commissioners together to meet on the date so fixed; and the board of commissioners shall then hear the evidence offered by any person interested, and shall determine whether or not said proposed work will be of public utility''. This provision, it is contended by counsel for appellant, violates the privileges and immunities, and equal protection clauses of the 14th amendment of the Federal Constitution and the provisions found in §23, Art. 1 of our Constitution, against granting special privileges and immunities. It seems to be the theory of counsel that this provision gives the petitioner a right of appeal from the decision of the appraisers and denies it to others affected by the work. This complaint against the law is not well taken. The provision does nothing more than to give a more thorough consideration to the question of public utility in aid of drainage and reclamation of wet and flooded lands to promote the public welfare. If incidentally the law favors a class urging such a public improvement over a class opposing it, a reason may be said to exist in the promotion of such public work upon which the legislative classification may rest, and the law can not. therefore, be said to be repugnant to these constitutional provisions. But if the law in this particular should be held to involve an arbitrary discrimination, and the provisions for a second hearing on the question of public utility before the board of commissioners be deemed invalid, it could go out and the rest of the law stand. *Taggart* v. *Claypool* (1896), 145 Ind. 590, 44 N. E. 18, 32 L. R. A. 586; *Indianapolis Brewing Co.* v. *Claypool* (1897), 149 Ind. 193, 48 N. E. 228; *State* v. *Ray* (1899), 153 Ind. 334, 54 N. E. 1067; *Board, etc.* v. *Albright* (1907), 168 Ind. 564, 81 N. E. 578.

Further complaint is made that the act is discriminatory in that it provides for appeal from the decision of the appraisers on the question of benefits and not on the question of damages. Ordinarily the right of appeal is matter of legislative discretion, to be given or

withheld as the legislature sees fit. It may not only declare what questions may be tried or reviewed on appeal, to what tribunal the appeal may proceed, and where it shall stop, but it also may deny any appeal. And this rule the writer believes applicable here. *Stockton* v. *Yeoman* (1913), 179 Ind. 61, 100 N. E. 2; *Collins* v. *Laybold, supra.* But §15, *supra,* provides that the appraisers shall make a schedule, for each tract of land affected, of assessment of benefits and of damages, including appropriations for right of way, for materials and for other purposes. The term assessment seems intended to be inclusive of damages and benefits. And another clause of this section provides that in case of an appeal under this act the question for review shall be the correctness of this assessment. Section 17 (§8233r Burns 1914), provides that at the time and place when and where the appraisers are to meet to revise the schedules they "shall correct the said schedules in the amounts of benefits or injuries * * * as to them shall seem right and proper according to the facts". Section 19 (§8233t Burns 1914), provides that the appraisers shall make their affidavits to this completed and perfected schedule of assessments that it "is a full, just and true assessment of all benefits and injuries that will accrue from the construction of the proposed work", and deliver the same to the clerk of the association, who shall file the same for record in the office of the recorder of the county. Section 21 (§8233v Burns 1914), provides that any person having any interest in any of the lands embraced in such assessment, may appeal therefrom to the circuit court within ten days from the time they are filed in the recorder's office. Now up to this point it is fairly clear that an appeal is intended on both questions—benefits and damages. But it is also provided in §21 that on such appeal "the only question tried shall be to determine whether appellant's lands are benefited thereby, and if so, what should be assessed against said lands." Here, then, is a conflicting intent, the latter

section declaring what the majority of the court deems an unwarranted and arbitrary discrimination against the owners on the question of damages or compensation, and as it is quite obvious that the law would have been passed without this later restriction on the right of appeal it may be declared invalid and the rest of the law upheld, and it is so decided.

Counsel's contention, that the tribunal constituted to determine the compensation and benefits awarded and assessed, the board of appraisers, is not a tribunal that satisfies 20. due process of law, can not be sustained. It is contrary to settled judicial and commentatorial utterances and long recognized practice. When land is taken under condemnation proceedings, the compensation therefor may be assessed by a board of appraisers or commissioners which are to be appointed for that purpose, and a state may provide by statute that their decision shall be final and this is due process of law. 5 Ency. U. S. Sup. Ct. Rep. 791 note 98, 792 notes 7 and 8. As to the provision for the assessment of benefits it was said in the case of *Garvin* v. *Daussman, supra,* 435: "The legislature may commit to the common council of a city, or a tribunal especially provided for the purpose, the power of apportioning the cost of an improvement, and of assessing the expense thereof, upon the property benefited in the manner provided by law, unless the method prescribed by law is plainly unadapted to arriving at a fair and equitable result, and also, to determine what property within the limits defined, if any are defined, will be benefited by the improvement. In respect to all such questions, the determination of the common council, or other body, within the limits of the jurisdiction specially committed to it, may be made conclusive. This power has been exercised and sanctioned too long to be now open to question." See, also, *Dawson* v. *Hipskind* (1909), 173 Ind. 216, 223, 89 N. E. 863, and cases there cited. The questions of damages and benefits may of course be submitted to the

same tribunal. *Bauman* v. *Ross* (1897), 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270. Appellant's claim that the act makes no adequate provision for the payment of damages and is, therefore, invalid, needs but a careful reading of §§15 and 19, *supra*, of the act to refute it. There is no merit in the assertion of counsel that the act violates §1 of Art. 7 of the State Constitution vesting the judicial authority of the State in courts. *City of Indianapolis* v. *State, ex rel.* (1909), 172 Ind. 472, 88 N. E. 687; *City of Terre Haute* v. *Evansville, etc., R. Co.* (1897), 149 Ind. 174, 181, 46 N. E. 77, 37 L. R. A. 189. The act provides for the condemnation and incorporation in any scheme of drainage or reclamation under it of any work theretofore done with the same object and the assessment of damages therefor. Authority to do this may be delegated by the legislature.

Our conclusion is that the act of 1913, *supra*, is valid. This being so there was jurisdiction to proceed under its provisions and the demurrer to appellant's complaint was properly sustained. Judgment affirmed.

NOTE.—Reported in 105 N. E. 496. On the question of the right to exercise power of eminent domain for drains and sewers, see 60 L. R. A. 195. As to what is due process of law, see 24 Am. Dec. 538; 20 Am. St. 554. See, also, under (1) 36 Cyc. 1037; (2) 8 Cyc. 877; (3) 8 Cyc. 1094; (4) 8 Cyc. 864; (5) 14 Cyc. 1025; 8 Cyc. 868; (6, 7) 14 Cyc. 1025; (8) 14 Cyc. 1025; 8 Cyc. 831, 837; (9) 14 Cyc. 1062, 1033; (10, 11) 15 Cyc. 841; (12) 8 Cyc. 1108; (13) 15 Cyc. 580; (14) 14 Cyc. 1035; (15) 36 Cyc. 1160; (16) 8 Cyc. 1051; (17, 19) 36 Cyc. 976; (18) 2 Cyc. 517; (20) 8 Cyc. 1126; (21) 8 Cyc. 1915 Ann. 809-21; (22) 15 Cyc. 566.